ORVILLE BISHOP *v.* D. L. ALLEN, EMILY M. ALLEN, MARY B. FELTON AND J. M. BEEMAN AND SON.

[IN CHANCERY.]

*Mortgage. Running Clause in.*

A mortgage, executed by a husband, his wife and her mother, on property owned jointly, to secure the mortagee for entering into a recognizance in a bastardy case against the husband, contained, also, the following clause : "*and pay him all sums of money now due or that may be due from us hereafter.*" Both the mortgage and the equity of redemption were assigned. Each of two of the mortgagors owed a separate debt to the mortgagee. The mortgagors did not know that said clause was in the mortgage, as the mortgage was not read to, or by, them ; but they might have read it ; and no fraud was practiced by the mortgagee. *Held,*

1. That both debts were secured.

2. That at all events, the mortgage contained enough to put the assignees of the equity on inquiry.
3. That it was the fault of the mortgagors that they did not know what was in the mortgage; and equity does not relieve the negligent.
4. *Tabor* v. *Cilley*, 53 Vt. 487, distingu'shed.

PETITION to foreclose a mortgage. Heard on a special master's report, September Term, 1882. ROYCE, Chancellor, decreed a foreclosure. It appeared that the mortgage in question rested on property owned jointly by the mortgagors ; that it was given to J. M. Hotchkiss to secure him for entering into a recognizance in a bastardy case against said D. L. Allen ; that the mortgage had been assigned to the petitioner, and the equity of redemption to defendants, Beeman & Son ; that the mortgage contained the following :

"The conditions of this deed are such that, whereas the said J. M. Hotchkiss has entered into a recognizance for the said D. L. Allen in a case of bastardy in favor of Eliza Thomas against said Allen in the sum of four hundred and fifty dollars conditioned for his appearance in the Franklin County Court next to be holden at St. Albans on the second Tuesday of April, 1876, now if we the said Allen Felton and Allen shall see said Hotchkiss clear from harm and expense in consideration of said recognizance, and pay him all sums of money now due or that may be due from us hereafter then this deed to be null and void otherwise of full force and effect."

Mary B. Felton was the mother of D. L. Allen's wife. The master found as to the execution of the mortgage :

"That on the 15th day of October, 1875, the day of the execution of said deed, the defendant D. L. Allen was under arrest upon a bastardy complaint brought against him by one Eliza Thomas ; that he was in the custody of Luther B. Hunt, an officer, and that Charles Soule, Esq., was acting as attorney for the prosecutrix in said complaint; that Allen applied to J. M. Hotchkiss to become bail for his appearance at the April Term, 1876, of the Franklin County Court, to answer to said complaint, and thereupon said Hotchkiss, in Charles Soule's office, drew up the mortgage and signed the recognizance for Allen's appearance, at that time stating that he would leave it with the court that if Soule came back and said the mortgage was executed, then he would become responsible as bail. He then gave the mortgage to Soule and requested him to go up with it and take the acknowledgment of the signatures. Allen was present in Soule's office and was held in custody by Hunt until after the execution of the mortgage by Mrs. Felton. From Soule's office Allen, Soule and Hunt went to Allen's house where the mortgage was signed and acknowledged by Allen and his wife, Emily M. Allen. Soule and Hunt then proceeded to a boarding house seventy or seventy-five rods distant from Allen's house, which Mrs. Felton was then keeping. When they arrived it was late in the evening and Mrs. Felton had retired. Allen went into her room, and she afterwards came out and

signed the mortgage in the presence of Allen, Hunt and Soule. I find from the testimony of the defendants, D. L. Allen and Mary B. Felton, which was seasonably objected to by the petitioner, on the ground that being parties to the mortgage in suit and the other party being dead, they were disqualified from testifying under the statute, that neither of them read or heard read the mortgage previous to signing and acknowledging the same, and that neither was aware of the existence of the last, or running clause, in the condition of said mortgage, or understood that said mortgage was given for any other or furthur purpose than to secure said J. M. Hotchkiss for becoming Allen's bail. I find from the testimony of Mrs. Felton that her first knowledge of the existence and effect of said running clause was obtained from a conversation with Dr. Hawley some weeks after the execution of said mortgage, and that afterwards when requested by Cephas A. Hotchkiss, in behalf of J. M. Hotchkiss' estate, to pay or secure the account she declined, stating to him that it was secured by said running clause. I also find from the testimony of said Allen and Mrs. Felton that they could both read the handwriting of J. M. Hotchkiss readily, and from their and also from other testimony adduced before me, that both had said mortgage in possession and had opportunity to read the same before signing, and that neither requested to have it read aloud. I am unable to find from any evidence before me that any fraud was practiced or any attempt made to prevent said Allen or Mrs. Felton from reading."

The master found that said D. L. Allen owed a note to said J. M. Hotchkiss, amounting to $65.80; that said Felton owed him an account, amounting to 98.08; and that said Allen had some offset, leaving a balance due on the note and account of $88.23.

*Noble & Smith* and *Geo. A. Ballard*, for the defendants.

The running clause in the condition of the mortgage cannot stand. The Allens and Mrs. Felton did not know of this; and courts of equity will carry out the *intention* of parties. *Frank* v. *Cole*, 10 Ill. 339. Allen did not propose to secure his *debt* to Hotchkiss. The subject was not mentioned to him. He was under arrest; wished for bail, and offered to, and supposed, he had secured that only.

If an instrument, by mistake of the author or draughtsman, does not speak the author's mind, it may be reformed. *Ward* v. *Camp*, 28 Ga. 74; 5 U. S. Dig. p. 287. The fact is undeniable that the mortgagors were deceived, and lured into signing an instrument different from what they intended or supposed they were signing. Equity will relieve. 5 U. S. Dig. p. 287; *O'Neil* v. *Teague*, 8 Ala. 345.

A court of equity will reform an instrument which, by mistake,

failed to execute the intention of the parties, as well upon equitable defence set up in an answer as in a suit brought directly for that purpose. *Hook* v. *Craighead*, 32 Mo. 405. The terms of the mortgage secure a present joint debt of the mortgagors and a future joint indebtedness. The orator seeks to have it cover the individual debts of two of the mortgagors. Owning a joint estate, the *presumption* is that their purpose in executing a joint mortgage was to secure some joint obligation. The rule applied in *Tabor* v. *Cilley*, 53 Vt. 487, must control.

*Edson, Cross & Start*, for the orator.

The running clause in the condition of the mortgage is valid. *Seymour* v. *Darrow*, 31 Vt. 163; *Daniel* v. *Colvin*, 16 Vt. 300. Beeman & Son are chargeable with all knowledge which they would have acquired, if they had made inquiry of J. M. Hotchkiss.

This case is not like that of *Tabor* v. *Cilley*, 53 Vt. 487. The debt of each of the mortgagors was secured. Exactness in describing the debt is not required. 1 Jones Mort. pp. 70, 345, 346; *Morrill* v. *Morrill*, 53 Vt. 79; *Booth* v. *Barnum*, 9 Conn. 287; *Sherris* v. *Craig*, 7 Cranch, 410. The recitals in a deed are conclusive, unless procured by fraud. Bigelow Estop. pp. 267, 281; Harmon Estop. p. 231; 3 Wash. Real Prop. p. 252; *Hollenbeck* v. *Dewit*, 2 John. 404; *Gavagan* v. *Bryant*, 83 Ill. 376; 1 Story Eq. (Redf. Ed.) s. 200, a. There was confirmation by Mrs Felton. Kerr Fraud & M. p. 296; *Wright* v. *Peet*, 36 Mich. 213. Surprise without fraud is no ground for relief. *McDaniels* v. *Bank of Rutland*, 29 Vt. 230.

The opinion of the court was delivered by

Rowell, J. On the facts found, it was the mortgagors' own fault if they did not know the full contents of the mortgage. There was no fraud on the part of the mortgagee, nor on the part of any one representing him. If the mortgagors were then content not to use the means of knowledge they had at hand, they and their assigns must now be content to stand to the mortgage according to its terms and import. Courts of equity do not sit

for the purpose of relieving parties, under ordinary circumstances, who refuse or neglect to exercise reasonable care and prudence to protect themselves. Equity relieves the vigilant, not the negligent. 1 Story Eq. Jur. s. 146, n. 2, s. 200, a ; *McDaniels* v. *Bank of Rutland*, 29 Vt. 230, 238. The running clause must stand. But what is the interpretation thereof ? Its language is this : ". . . and pay him all sums of money now due [from us] or that may be due from us hereafter." It would seem that no great violence would be done to this language if it were held, without the aid of accompanying circumstances, to include a several as well as a joint indebtedness. But when we consider that at the time of the execution of the mortgage no joint indebtedness in fact existed, and that it does not appear that any was then expected thereafter to exist; and especially when we consider that Mrs. Felton, when called upon by the administrator of the mortgagee to pay her account due the estate, refused because it was secured by the mortgage—thus showing how she understood the matter,— there can be but little question that said clause should receive the construction contended for by the petitioner. And this construction must prevail against the assignees of the mortgagors as well as against the mortgagors themselves. They were bound to take notice that a several indebtedness as well as a joint indebtedness might be secured by the mortgage. The case is unlike *Tabor* v. *Cilley*, 53 Vt. 487, invoked as conclusive against the petitioner on this point. There the mortgage described only $1,000 of present indebtedness, but contained a clause to secure *future* indebtedness, and a reformation of the mortgage to make it cover $1,750 of indebtedness existing at the time of its execution and intended to be secured thereby, was refused as against third persons who had acted in faith of the absolute statements of the mortgage as to the amount of present indebtedness secured thereby, and of the mortgagors' statements as to the future indebtedness ; while here the mortgage on its face is not misleading, but may well be taken to secure a several as well as a joint indebtedness, and, at all events, contains enough to have put the assignees of the equity of redemption on inquiry in this behalf, which they do not seem to

have made, nor does it appear that they have in any manner acted on the assumption that the mortgage secured only a joint indebtedness.

Decree affirmed, and cause remanded.