DAVID W. MOUNTAIN v. JAMES B. DAY.[1]

January 8, 1904.

Nos. 13,699—(165).

**Fraudulent Representations.**

An action will lie for fraudulent representations made by the prospective purchaser of land as to its value and condition; the land being at a distance from the place of purchase, and the vendor being ignorant as to its condition and value, and relying upon the truthfulness of such representations.

**Measure of Damages.**

The court instructed the jury that the measure of damages was the difference, if any, between the value of the land as it was represented to be, and its actual value at that time. *Held*, while the instruction is technically incorrect, the true measure of damages being the difference between the actual value and the purchase price, no prejudice resulted therefrom, and, if it was considered prejudicial, attention should have been called to the inaccuracy.

**Damages.**

The verdict was not excessive.

[1] Reported in 97 N. W. 883.

Appeal by defendant from an order of the district court for Blue Earth county, Lorin Cray, J., denying a motion for a new trial, after a trial and verdict in favor of plaintiff for $6,800. Affirmed.

*F. D. Larrabee, W. E. Young,* and *Sawyer & Sawyer,* for appellant.
*A. E. Clark* and *H. L. & J. W. Schmitt,* for respondent.

LEWIS, J.

Respondent commenced this action against appellant for the purpose of recovering damages by reason of having been induced to sell him two hundred sixty acres of land upon false and fraudulent representations as to its value. The land was located two miles from the village of Good Thunder, in Blue Earth county, Minnesota. Respondent resides upon a farm about six miles from the village of Hartford, in Wisconsin; nearly four hundred miles distant from the land in controversy. The evidence introduced on behalf of respondent tends to show that the land was given him by his father about twenty-four years prior to this trial, and that at the same time a brother of respondent was given an adjoining tract of land, upon which he thereafter resided; that respondent gave to his brother the use of his land in consideration of the payment of taxes and assessments against it, which arrangement continued until the sale to appellant. Respondent had only seen the land once, about sixteen years before the alleged purchase, when he drove by it on a public highway, and had not personally kept posted upon the rise in value of that class of lands in the vicinity in which his property was situated, and had not been informed of the changing conditions.

Appellant was a business man in Hartford, knew respondent very well, and their families were upon intimate social relations. According to respondent's testimony, appellant, having ascertained that he owned the land in Minnesota, met him in Hartford and asked for an option on the land, to which respondent replied that he would not give an option; that he would rather appellant would go and see the land —see what it was worth—and perhaps then they could make a bargain, to which appellant replied that he knew what land was worth in that locality; that improved land was selling for $40 an acre, and unimproved land from $20 to $25 an acre. The result of this conversation was that on March 3, 1902, an option was executed, giving appellant

the privilege, for the period of thirty days, of purchasing the land at $8,000. On March 17 following, appellant appeared at respondent's farm at about seven o'clock in the morning, accompanied by an attorney, and, according to respondent's testimony, said he had been in Minnesota and looked at the land; that it was in very poor condition —all run over with quack grass and foul stuff—and that it was worth about $7,000; and that he could buy farms up there cheaper than that.

The result of these representations was that a contract was entered into by which respondent agreed to sell the premises to appellant for the sum of $7,500. On March 20, appellant again appeared at respondent's farm in company with a lawyer, at which time a deed to the premises was executed and delivered by respondent. Before the execution of the deed, a conversation took place, the purport of which, according to respondent's testimony, is as follows: Respondent told appellant that he had agreed to sell the farm too cheap; that he had a letter from one Flynn, stating that good, improved farm land was selling from $60 to $65 per acre, and that his farm was worth $45 per acre; and that he had a telegram from his brother to hold the farm. The letter and telegram were received after the contract was executed. Respondent refused to sign any deed, whereupon appellant renewed his representations as to the value of the land, claiming he was paying all it was worth, and suggesting that respondent was being "fooled" by his brother, who had a favorable lease of the land, and did not want it sold; and respondent finally executed the deed. At the same time appellant entered into a writing in which he agreed to pay respondent the sum of $300 in case the land was sold by him within one year for $35 an acre, or more. There was also evidence tending to show that respondent's wife was induced to sign the deed upon the ground that litigation would follow if she did not. Respondent having secured a verdict for the sum of $6,800, appellant made a motion for judgment notwithstanding the verdict, and for a new trial.

In Griffin v. Farrier, 32 Minn. 474, 21 N. W. 553, the rule is applied that an action will lie for fraudulent representations made by the vendor of land as to its value and situation; the land being at a distance from the place of sale, the vendee being ignorant as to its value and location, and being purposely and by fraudulent device induced to purchase, relying upon the truthfulness of such representations. The

party making misrepresentations cannot escape their legal effect, even though he be a prospective purchaser. There is no difference in this respect between a vendor and a purchaser.

In the case before us there was evidence sufficient to justify the jury in finding that appellant had knowledge of the true value of the land, and that he stated to respondent that it was worth about half of its true value; that appellant knew that respondent was ignorant of the conditions existing in Minnesota, where the land was located, and had no accurate information regarding it, and for that reason appellant induced him to rely upon his statements and accept his knowledge of the situation. In determining whether these representations were made with fraudulent intent, and whether respondent was entitled to rely upon them, all of the circumstances surrounding the parties at the time must be taken into consideration. The representations on the part of the appellant amounted to more than an expression of an opinion, or trade talk, or a mere running down of property for the purpose of getting it as cheaply as he could, because they were based on positive assertions as to his knowledge, coupled with an effort to induce the owner to rely upon his judgment; and respondent was excusable, under the circumstances, in accepting the statements as true, and in relying upon them. The mere fact that he had seen the property once, sixteen years before, and that his wife had visited the place ten years before, and that his brother was in possession, having its use for the payment of taxes, and the fact that he could have ascertained its value, by telegram or letter, before signing the option, are not sufficient to charge him with negligence. The option, therefore, having been obtained under such circumstances as would make it void for misrepresentations, was the transaction ratified by the subsequent execution of the contract and deed? We think not, if the evidence on behalf of respondent be accepted as true. Appellant represented that he had seen the land after securing the option, that it was not worth more than $7,000, that the option price was too much, that the land was overrun with foul grass and weeds, and that similar land in the vicinity could be purchased for less money. It does not appear, therefore, that the contract was entered into by respondent with knowledge that the representations were false, but, rather, that he was persuaded to execute it by reason of additional and other statements as to the land and its

value, based upon appellant's personal knowledge. The execution of the contract was not a ratification of what had preceded, but an act based upon a continuation of confidence. Three days later, when the deed was executed, it is true, respondent had obtained some additional information—had received a letter to the effect that his land was worth $45 per acre, and a telegram from his brother to hold the land. This knowledge was communicated by respondent to appellant as a reason for not executing the deed—that his land was worth more than called for by the contract—whereupon, with the assistance of an attorney, appellant renewed his arguments; insisting that he knew what he was talking about, and that the brother had a selfish purpose in misleading him, because he wanted to remain in possession of the land. Relying on these statements, respondent executed the deed. In view of respondent's limited information and means of obtaining it, the execution of the deed cannot be treated as a ratification of the contract.

From all the evidence in this case, the court was justified in submitting to the jury the question whether the misrepresentations had been made, and whether they were relied upon by respondent in making this contract and deed, and the verdict of the jury is final upon that proposition.

2. The court instructed the jury that plaintiff, if entitled to recover at all, was entitled to recover from defendant the difference, if any, between the value of the land, as it was so stated and represented to be, and its actual value at that time. This instruction is technically incorrect, the true measure of damages being the difference between the actual value of the land and the purchase price; but we are unable to see wherein appellant was prejudiced. The land was represented by appellant at one time to be worth only $7,000, and at another time $30 an acre; and the difference between the actual value of the land, according to the evidence, and its represented value, would, at any rate, be more than the amount of the verdict returned. In any event, the court's attention should have been called to the fact that the rule was not accurately stated, if it was considered prejudicial. Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754. The verdict was not excessive. The value of the land was from $55 to $60 an acre, according to the testimony.

Order affirmed.