CORA E. CROMPTON v. ALBERT H. BEEDLE AND A. B. THOMAS.

January Term, 1910.

Present: MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 16, 1910.

*Equity—Pleading—Demurrer—Allegations on Information and Belief—Real Estate—Vendor and Purchaser—Fraud by Purchaser—Elements — Concealment — Representations by Purchaser—Matter of Fact or of Opinion—Value—Rescission—Cancellation of Instruments.*

In a suit in equity, any fact  material to the orator's case, which is presumably within the personal knowledge of the defendant and presumably not within the personal knowledge of the orator, is well pleaded in the bill by an averment thereof on information and belief; and, therefore, such fact so pleaded is admitted by a demurrer to the bill.

As a general rule, the mere failure of the buyer to disclose something extrinsic or intrinsic to the thing bought, known to him but unknown to the seller, is not in a legal sense fraud; but the law distinguishes between passive concealment and active concealment, and where the buyer has full information, and represents that he has, if he discloses a part only, and by words or conduct leads the seller to believe that he has made a full disclosure, and does this with intent to deceive and to prevent inquiry, and his words and conduct are relied on by the seller to his damage, the buyer is guilty of fraud against which equity will relieve the seller.

Unfairness and fraud may be collected from a variety of circumstances, and it is ordinarily sufficient to establish fraud on the part of the buyer that he has actively attempted to ensnare, and has in fact ensnared, the seller into the making of an unconscionable contract.

Even in the absence of any confidential relation between the parties to a sale, one of them, without direct misrepresentation, may be guilty of fraud by means of words and acts calculated to deceive, and which in fact do deceive and induce the sale.

As a general rule, a representation as to value is a matter of opinion, and is not deemed fraudulent, but if it is made as an assertion of fact, with the purpose that it shall be relied on as such, and it is so relied on, it may amount to fraud.

A vendor's bill to rescind a sale and conveyance of real estate for fraudulent representations, which alleges that she was induced to forbear inquiry as to the value of the land by recited wilful misrepresentations made by the vendee to prevent such inquiry, is sufficient on demurrer as against the objection that it does not appear how the vendor was prevented from making inquiry.

The bill is not inconsistent because it alleges both that the land in question consists of an "undeveloped granite quarry" and that the land is of great value, for the quoted phrase signifies a place whence granite may be taken.

Where the vendor of real estate is led to forbear inquiry in respect thereof by the vendee's false representations as to matters material and not collateral, intentionally made with knowledge of their falsity for the purpose of inducing such forbearance, or by his fraudulent artifice or deceitful manoeuvers resorted to with like knowledge and purpose, the question of whether a prudent man would have been misled in like circumstances is immaterial.

The wilful misrepresentation by a prospective purchaser of land, which he knows to be valuable quarry land, that it is merely a poor pasture of little value, accompanied by misrepresentations as to the object of the purchase, whereby the owner, who resides a long distance from the land and is ignorant of its value, is induced to forbear inquiry in respect thereof and to sell it for an inadequate price, amount to fraud against which equity will relieve by compelling a reconveyance, although, in the interval between the giving of an option and the delivery of a deed under it, which was given in reliance on the misrepresentations, the owner had means of making inquiry.

In a suit in equity by a vendor of real estate to rescind the sale and conveyance thereof for fraudulent representations by the vendee as to its value, whether the vendor relied on the representations, instead of on his own judgment, is a question of fact to be determined on the hearing, and cannot be considered on demurrer to the bill which alleges conduct on the part of the vendee calculated to deceive the vendor.

APPEAL IN CHANCERY. Orange County. Heard at Chambers, November 25, 1909, on demurrer to the bill, *Taylor,* Chancellor. Demurrer sustained, bill adjudged insufficient and dismissed with costs. The oratrix appealed. The opinion states the case.

*Cowles & Moulton* and *March M. Wilson* for the oratrix.

Misrepresentations made for the purpose of inducing the person to whom made to forbear investigation are fraudulent. *Fox* v. *Mackreith,* 2 Brown C. C. 400; *Turner* v. *Harvey,* Jacob, 169; *Walters* v. *Morgan,* 3 DeG. F. & J. 718; *Turner* v. *Green,* 2 Ch. 209; 1 Story Eq. Jur. (13th Ed.) §192; *Livingstone* v. *Peru Iron Co.,* 2 Paige 393; *Morgan* v. *Dinges,* 23 Neb. 271; *Hanscom* v. *Drullard,* 79 Cal. 234, 21 Pac. 736; *Brady* v. *Finn,* 162 Mass. 260, 38 N. E. 506; *Mallory* v. *Leach,* 35 Vt. 156; *Howard* v. *Gould,* 28 Vt. 523; *Graham* v. *Stiles,* 38 Vt. 578; *Venezuela Co.* v. *Kisch,* 36 L. J. Chan. 849; *Thompson* v. *Randall,* 36 Ky. Law. 716, 90 S. W. 251. Though generally representations as to value and quality are treated as mere expressions of opinion and not actionable, this is not always so; for such statements may be made with the purpose of having them accepted as of fact, and, if this is done, and such statements are so relied on, they are treated as the parties designed they should be, and if fraudulent, are actionable. *Jackson* v. *Collins,* 39 Mich. 557; *Clark Co.* v. *Rice,* 127 Wis. 451, 7 Am. & Eng. Ann. Cas. 505; *Picard* v. *McCormick,* 11 Mich. 68; *Neil* v. *Cummings,* 75 Ill. 170; *Gifford* v. *Carvill,* 29 Cal. 589; *Wall* v. *Stubbs,* I Madd. Chan. 80; 1 Story Eq. Juris. (13th Ed.) 206; *Morehead* v. *Eades,* 3 Bush (Ky.) 121; *Stones* v. *Richmond,* 21 Mo. App. 17; *White* v. *London,* 90 Hun. 218; *Cahn* v. *Reid,* 18 Mo. App. 130; *Murray* v. *Tolman,* 162 Ill. 417, 41 N. E. 748; *Borders* v. *Kattleman,* 142 Ill. 96; *Newton* v. *Gauss & Co.,* 7 Tex. Civ. App. 90; *Miner* v. *Medbury,* 6 Wis. 121; *Nowlin* v. *Snow,* 40 Mich. 699; *Chase* v. *Broughton,* 93 Mich. 285; *Cressler* v. *Rees,* 27 Neb. 515; *Jackson* v. *Collins,* 39 Mich. 557; *Smith* v. *Richards,* 13 Pet. 26; *City of Tacoma* v. *Tacoma Light, etc. Co.* 50 Pac. 55; *Cruess* v. *Fessler,* 39 Cal. 336; *McClellan* v. *Scott,* 24 Wis. 81; *Haygarth* v. *Wearing,* 12 L. R. Eq. 320; *Mountain* v. *Day,* 91 Minn. 249; *Robinson* v. *Reinhart,* 36 N. E. 519; *Burr* v. *Wilson,*

22 Minn. 206; *McKnight* v. *Thompson,* 39 Neb. 752; *Simar* v. *Canaday,* 53 N. Y. 298, 13 Am. Rep. 523; *Chrysler* v. *Canaday,* 90 N. Y. 272, 43 Am. Rep. 166; *Andrews* v. *Jackson,* 168 Mass. 266; *Medbury* v. *Watson,* 6 Metc. 247; *Parker* v. *Moulton,* 114 Mass. 99; *Kimball* v. *Bangs,* 144 Mass. 321; *Boddy* v. *Henry,* 126 Iowa 31; *Vernon* v. *Keyes,* 12 East. 632; *Gustafson* v. *Rustemeyer,* 70 Conn. 125, 39 Atl. 104; *People* v. *Pickens,* 153 N. Y. 576; *Scott* v. *Haynes,* 12 Mo. App. 597; *Cox* v. *Gerkins,* 38 Ill. App. 341; *Bacon* v. *Frisbie,* 15 Hun. 26; *McClellan* v. *Scott,* 24 Wis. 81; *Harris* v. *McMurray,* 23 Ind. 9; *Ladd* v. *Pigott,* 114 Ill. 647; *Stevens* v. *Allen,* 51 Kan. 144, 32 Pac. 922.

There can be no question here of negligence on the part of the oratrix in believing defendant's misrepresentations; for it does not lie in his mouth to say that she should not have believed him. *Chamberlin* v. *Fuller,* 59 Vt. 247; *Chamberlain* v. *Rankin,* 49 Vt. 133; *Kendall* v. *Wilson,* 41 Vt. 567; *Reynell* v. *Sprye,* 8 Hare 222; *Shepherd* v. *Kain,* 5 Barn. & Ald. 240; *Riley* v. *Bell,* 120 Iowa 618, 95 N. W. 170; *Wilson* v. *Nichols,* 43 Atl. 1052; *Borders* v. *Kattleman,* 142 Ill. 96; *Reid* v. *Flippen,* 47 Ga. 273; *Harvey* v. *Smith,* 17 Ind. 272; *Ladd* v. *Pigott,* 114 Ill. 647, 2 N. E. 503; *Stevens* v. *Allen,* 51 Kan. 144, 32 Pac. 922; *Bank* v. *Hammond,* 25 Col. 367, 55 Pac. 1090; *Dashiel* v. *Harshman,* 85 N. W. 85; *May* v. *Loomis,* 140 N. C. 350, 52 S. E. 728; *Hutchinson* v. *Gorman,* 71 Ark. 305, 73 S. W. 793; *Western etc. Co.* v. *Anderson,* 101 S. W. 1061; *Hansen* v. *Kline,* 113 N. W. 504; *Trust Co.* v. *Cunningham,* 103 Me. 455; *Turner* v. *Kuehnle,* 62 Atl. 327; *Handy* v. *Waldron,* 35 Atl. 884; *Smith* v. *Werkheiser,* 115 N. W. 964; *U. S. Gypsum Co.* v. *Shields,* 106 S. W. 724; *Perry* v. *Rogers,* 87 N. W. 1063; *Smith* v. *McDonald,* 102 N. W. 738; *Manuel* v. *Shafer,* 115 N. W. 801; *Steen* v. *Weisten,* 94 Pac. 834; *Judd* v. *Walker,* 114 S. W. 979; *Rollins* v. *Quimby,* 86 N. E. 350; *Buckley* v. *Acme Food Co.* 113 Ill. App. 210; *Wells* v. *Adams,* 88 Mo. App. 215; *White* v. *London,* 90 Hun. 218; *Miller* v. *John,* 11 Ill. App. 56.

*John C. Sherburne, W. B. C. Stickney* and *W. A. Dutton* for the defendants.

The purchaser of real estate is under no duty to the seller to reveal anything is respect of the property. Snells Eq. (11th

Ed.) 471; Story Eq. Jur. §§147, 148, 205-207; Pom. Eq. Jur. (3rd Ed.) 903; Sugden on Vendors, 6; 2 Kent 490; *Pratt Land and Improvement Co.* v. *McClaim,* 135 Ala. 452; *Harris* v. *Tyson,* 24 Pa. St. 347; *Smith* v. *Beattie,* 2 Iredell's Eq. 456; *Shields* v. *Hanbury,* 128 U. S. 584; *Williams* v. *Spurr,* 24 Mich. 335; 2 Warvelle on Vendors, §1, 845; *Bailey et al.* v. *Woodbury,* 50 Vt. 166; *Brainard* v. *Holsaple,* 4 G. Greene 485; *Cadman* v. *Horner,* 18 Ves. 10; Pom. Eq. Jur. (3rd Ed.) §903; *Robins* v. *Hope,* 57 Cal. 493; *Eichelberger et al.* v. *Barnitz et al.,* 1 Yates 307.

A vendor is presumed to know the condition of his own property and does not occupy so favorable a position as regards statements made in negotiating a trade as the vendee. Even in the case of a vendee statements made to him as to value and quality are usually treated as matter of opinion so as not to entitle him to any remedy therefor on a charge of fraud. *Lake* v. *Tyree,* 90 Va. 719; *Spencer* v. *King,* 3 Ohio 270; *Speiglemeyer* v. *Crawford,* 6 Paige 254; *Kennedy* v. *Richardson,* 70 Ind. 534; *Neidefer* v. *Chastain,* 71 Ind. 363; *Bryne* v. *Stewart,* 124 Pa. 450; *Ellis* v. *Andrews,* 56 N. H. 83; *Bradbury* v. *Haines,* 90 N. H. 123; *Page* v. *Parker,* 43 N. H. 368; *Shanks* v. *Whitney,* 66 Vt. 405; *Belka* v. *Allen,* 82 Vt. 456; *Merwin* v. *Arbuckle,* 81 Ill. 501; *Foley* v. *Cowgill,* 5 Blackf. 18; *Wise* v. *Fuller,* 29 N. J. Eq. 257; *Taylor* v. *Feet,* 4 Barb. 102; *Parker* v. *Moulton,* 114 Mass. 99; *Castleberry* v. *Scandrett,* 20 Ga. 242; *Brownlee* v. *Hewitt,* 1 Mo. App. 360; *Miller* v. *Maig,* 36 Ill. 109; *People* v. *Tynon,* 2 Colo. App. 131; *Storthz* v. *Arnold,* 845 W. (Ark.) 1036; *Graham* v. *Pancoast,* 30 Pa. 89; 2 Kent 658.

A misrepresentation to be ground for setting aside a deed of land must not be merely one of opinion, statement of intention, or promise to do some act in the future. *Lawrence* v. *Gayette,* 78 Cal. 514. Mere inadequacy of price is not sufficient to set aside a deed. 2 Pom. Eq. Jur. §926; *Mann* v. *Betterly,* 21 Vt. 326; *Wood* v. *Boynton,* 64 Wis. 265; *Griffith* v. *Spratley,* 1 Cox 383. In the absence of fraud inadequacy of price is not a ground for rescission. 2 Warvelle on Vendors, 981; *Troy* v. *Nelson,* 24 Vt. 189.

The oratrix had no right to rely upon the representations made by defendant Beedle when, by the exercise of reasonable diligence, she might have ascertained the facts. Smith, Law of

Fraud, par. 61; Cooley on Torts, 487; *Saunders* v. *Hatterman,* 2 Iredell's Law 32, 37 Am. Dec. 404; *Cagney* v. *Cerson,* 77 Ind. 494; *Kilke* v. *Woodley,* 78 Pac. 299; *Cobb* v. *Wright,* 43 Minn. 83, 44 N. W. 662; *Langdon* v. *Green,* 49 Mo. 363; *Steinmeyer* v. *Schroeppel,* 226 Ill. 9; 1 Bigelow on Fraud, 436; *McDaniels* v. *Bank of Rutland,* 29 Vt. 230; *Durkee* v. *Durkee,* 59 Vt. 70; *Town of Ripton* v. *McQuivey's Admr.* 61 Vt. 76; 6 Cyc. 298.

HASELTON, J.   The oratrix in this cause, a resident of Worcester, Massachusetts, sets out in her bill as amended that, at a time named, she was the owner in fee simple of a farm in Randolph in this State; that she purchased the farm for the use of a relative and had herself never been in Randolph, and had never seen the farm and was ignorant of its true value; that there was and is an undeveloped and valuable granite quarry in and under the pasture of the farm but that at the time named she had no knowledge of such quarry.   She further sets out that at the time in question, which was October 22, 1908, the defendant Beedle, called upon her in Worcester and stated that he desired to buy the pasture mentioned, and that she told him that she did not know the value of the pasture apart from the farm; that thereupon the defendant Beedle told her that the pasture was poor and of comparatively little value; that it adjoined some land that belonged to him, and that the only way of access to the pasture was over his land, and that it annoyed him and his family to have his land gone over for such access; and that that was the only reason why he desired to purchase the pasture.   The oratrix alleges that she thereupon asked Mr. Beedle to consult with one Thayer, who was her attorney, and that Mr. Beedle thereupon called upon Thayer and represented that the pasture was worth not more than $400, and that he was familiar with the value of lands in Randolph; that he repeated to Thayer, as his sole reason for wishing to buy the pasture, the reason which he had given to the oratrix; that Beedle further represented to Thayer that he had no plan or scheme in regard to the purchase of the land other than he had stated, and that he represented to the attorney that the fair value of the entire farm was $4,000.

The oratrix alleges that the defendant Beedle acted in partnership with the defendant Thomas, in the purchase of the

farm and in the negotiations in respect thereto, and that in those regards he was the agent of the defendant Thomas; that he made the representations stated in behalf of himself and of the defendant Thomas; and the oratrix further alleges that the defendants knew of the existence of the granite quarry and knew that she was ignorant of its existence, that the representations made as above stated were false and were known to the defendants to be false and were fraudulently made for the purpose of inducing her to sell the farm to the defendants at a price much less than its true value and for the purpose of inducing her to forbear inquiry as to the existence and value of the granite quarry and as to the value of the farm as affected thereby; that the pasture was not, as represented, of little value, $400, but $15,000, that the reason of the desired purchase was not that given, but that the existence of the quarry was such reason, and that the defendants had a plan or scheme in regard to the purchase of the land, which was to develop the quarry or to sell the farm at a great price by reason of the quarry, and that $4,000 was not the fair value of the farm, but that it was of much greater value, of the value of $20,000. The oratrix further alleges that she relied upon the representations made to her and her attorney, and that in reliance thereon, and not otherwise, on the day named she gave the defendant Beedle an option to purchase the entire farm for $4,000, and that about a month thereafter, at the request of the defendant Beedle, and in reliance upon the representations already set forth she deeded the farm to the defendants. The oratrix alleges that in reliance upon the representations made, as stated, she was induced to forbear, and did forbear, inquiry as to the real value of the farm and as to the existence, or value, of the quarry, and that she would not have sold the farm as she did if she had known of the existence of the quarry. The oratrix tenders the defendants the purchase price of the farm and prays that they may be ordered to re-convey the farm free of incumbrance upon payment to them of the purchase price. Other prayers appropriate to the special relief sought are made, and the bill contains a prayer for general relief. The defendants answering deny the material allegations of the bill, and incorporate into their answer a demurrer to the bill.

The case was heard on the demurrer, and, after allowing amendments, the court of chancery sustained the demurrer, adjudged the bill insufficient and decreed that it be dismissed with costs to the defendants. The oratrix appealed. Some of the allegations of the bill are made on information and belief, but there is a distinction between such allegations and allegations of information and belief merely and the averments on information and belief are of things which may properly be pleaded in that way. So the recitals hereinbefore made are to be taken as true. *Watkins* v. *Childs,* 80 Vt. 99, 66 Atl. 805; *Quinn* v. *Valiquette,* 80 Vt. 434, 68 Atl. 515, 14 L. R. A. (N. S.) 962.

In an early Pennsylvania case cited by the defendants it is said that ''concealment on the part of the vendee is a novel objection.'' But the question presented has, in its various aspects, been discussed for many centuries. Cicero puts the case of one who buys for a trifle, gold, which the seller, in his ignorance, supposes to be brass; and he moots similar questions regarding sales of personal property and of real estate as well. But we pass over the discussions of the ethical writers and the civilians, discussions which are in some cases luminous and in others obscure. It has long been settled in common law jurisdictions that, in general, the mere failure of a buyer to disclose something extrinsic or intrinsic to the thing bought, known to him and not known to the seller, is not in legal sense fraud. *Fox* v. *Mackreth,* 2 Bro. C. C. 420; *Harris* v. *Tyson,* 24 Pa. St. 347, 64 Am. Dec. 661; *Smith* v. *Beatty,* 2 Iredell's Eq. 456, 40 Am. Dec. 435.

In *Laidlaw* v. *Organ,* 2 Wheat. 178, 4 L. Ed. 214, it appeared that in February, 1815, the defendant got, through private sources, news of our Treaty of Peace with England, of which the plaintiffs were ignorant and that without disclosing the news the defendant bought of the plaintiffs one hundred and eleven hogsheads of tobacco the price of which was greatly enhanced by news of the peace. It appeared that the plaintiffs inquired, in the course of the transaction, if there was any news calculated to enhance the value of tobacco and that no reply was made to their inquiry. In the district court it was held as matter of law, that there could be no recovery. Chief Justice Marshall in delivering the opinion of the Supreme Court said: ''The question

in this case is, whether the intelligence of extrinsic circumstances which might influence the price of the commodity, and which was exclusively within the knowledge of the vendee, ought to have been communicated by him to the vendor. The court is of opinion that he was not bound to communicate it. It would be difficult to circumscribe the contrary doctrine within proper limits where the means of intelligence are equally accessible to both parties. But at the same time each party must take care not to say or do anything tending to impose upon the other.'' In accordance with these views the court held that in the circumstances disclosed it was a question of fact whether any imposition was practiced by the vendee upon the vendor, and so the judgment was reversed and the cause remanded. This case arose in Louisiana, and in view of the eminence. of the reporter, the fact should be noted that he puts at the head of the case the designation ''local law.'' But the opinion of the court is based on no principles peculiar to the civil law there prevailing and indeed makes no reference to the civil law. The reversal in that case was, in view of the silence of the party benefitted by the contract, an extreme course. It is so commented on in *Lapish* v. *Wells,* 6 Greenl. 188, (Maine) and in *Bayard* v. *Shunk,* 1 Watts. & S. 92, 37 Am. Dec. 441. In *Paddock* v. *Strobridge,* 29 Vt. 470, there is a dictum by Chief Judge Redfield to the effect that the disposition of the case was unwarranted. The Paddock case, however, fully recognizes the doctrine of negative deceit, and that there is a wide field for the application of the principle that in some circumstances the suppression of a truth may be equivalent to the assertion of a falsehood. It may be noted that we have it upon unimpeachable authority that Judge Redfield's opinion in *Paddock* v. *Strobridge* was prepared by way of dissent, and that by mistake it happened to get printed as the opinion of the court. R. Dig. 125, Vt. Dig. Advance Sheets, 445. However, this Court has since referred to the case as a leading one in this State. *Maynard* v. *Maynard,* 49 Vt. 297, 300. In *Etting* v. *Bank of the United States,* 11 Wheat. 59, 6 L. Ed. 419, a case which went to the Supreme Court from the Circuit Court of Maryland, *Laidlaw* v. *Organ* was cited in argument and the effect of the concealment or supression of material facts by one party to a contract was the main question under discussion, but as the Justices were equally divided in regard to the aspect of the question presented in the case, the

opinion contributes nothing to the subject, and the case is of interest chiefly for the abstract of the arguments of counsel, of Mr. Webster and Mr. Taney on the one side, and of Mr. Wirt and Mr. Emmett on the other. *Laidlaw* v. *Organ* had to do with extrinsic circumstances affecting the market value of the thing purchased. The matter of something intrinsic in the thing itself is here involved, and in a case decided a few years later than *Laidlaw* v. *Organ,* Lord Eldon, in a carefully considered case, gave expression to the law here applicable. He said: "If an estate is offered for sale and I treat for it knowing that there is a mine under it and the other party makes no inquiry I am not bound to give him any information of it; he acts for himself and exercises his own sense and knowledge. But a very little is sufficient to affect the application of that principle. If a word, if a single word, be dropped which tends to mislead the vendor, that principle will not be allowed to operate." *Turner* v. *Harvey,* Jacob. 169, 178.

In *Walters* v. *Morgan,* 3 De G. F. & J. 718, Lord Chancellor Campbell expressed his full concurrence in the doctrine of *Turner* v. *Harvey,* and said that not only a single word but "a nod or a wink or a shake of the head, or a smile from the purchaser, might defeat the application of the principle that mere reticence on the part of a purchaser does not in law amount to fraud."

In *Livingston* v. *Peru Iron Co.,* 2 Paige 390, Chancellor Walworth expresses his approval of what was said by Lord Eldon in *Turner* v. *Harvey,* and appplies the doctrine in the case before him which was this: One of the defendants had found out that there was a valuable mine on lands of Livingston which were remote from the latter's residence. Thereupon he represented to Livingston that the land was of no value except for a sheep pasture. By these representations Livingston was thrown off his guard and contracted to sell the land in question at the usual price of pasture land in the region where it was located and did not inquire as to its true value, although he had an agent near the premises. It was held that the purchaser was guilty of fraudulent deception which equity would take notice of and act upon. The case, however, turned upon another point.

The doctrine with respect to the legal duty of a vendee to refrain from deceitful statements with respect to the property

of the vendor is firmly maintained in well considered cases. *Haygarth* v. *Wearing*, L. R. 12 Eq. 320; *Mountain* v. *Day*, 91 Minn. 249, 97 N. W. 883.

In the latter case the syllabus, by the court, is this: "An action will lie for fraudulent representations made by the prospective purchaser of land as to its value and condition, the land being at a distance from the place of purchase, and the vendor being ignorant as to its condition and value and relying upon the truthfulness of such representations."

We have, thus far, referred to no cases in which a confidential relation existed, but only to cases in which it was deemed that the parties dealt at arms length. In *Mallory* v. *Leach*, 35 Vt. 156, 82 Am. Dec. 625, it appeared that the defendant desired to purchase certain stock of the plaintiff, a woman, that he knew that she was ignorant of its value, and that, for the purpose of getting her stock at less than its value, he told her a half truth of a damaging character about the stock and suppressed facts which necessarily qualified the effect of what he did disclose, and that so he succeeded in purchasing the stock at a price much less than its true value. It was held by the Supreme Court that there were confidential relations between the parties and that in view of such relations the course of the defendant was fraudulent and actionable. It is difficult to say from the charge of Judge Pierpoint, who tried the case below, and whose charge was sustained, that the existence of confidential relations, in any proper sense, was made essential to recovery by the plaintiff, and the opinion of the Supreme Court, written by Judge Aldis, contains a dictum in accordance with which recovery might have been had irrespective of the existence of a confidential relation. Bigelow in his work on Frauds, vol. 1. pp. 504, 505, states this case in his text without reference to the evidence of a confidential relation, but in a note refers to that matter, and says: "The result must have been the same without that."

Unfairness and fraud may be collected from a variety of circumstances, and it is ordinarily enough to establish fraud, that a vendee has actively attempted to ensnare, and has in fact ensnared, the vendor into the making of an unconscionable contract. Where concealment of an essential thing is effected by an industrious course of misleading and deceptive talk or

conduct there is fraud against which equity will relieve. The law distinguishes between passive concealment and active concealment. Where one has full information and represents that he has, if he discloses a part of his information only, and by words or conduct leads the one with whom he contracts to believe that he has made a full disclosure and does this with intent to deceive and overreach and to prevent investigation, he is guilty of fraud against which equity will relieve, if his words and conduct in consequence of reliance upon them bring about the result which he desires. The jurisdiction of courts of equity to relieve against active and effective fraud is so essential to the administration of justice therein that such courts often indeed, to use the language of Chief Justice Crew, as reported by Sir William Jones, will "take hold of a twig or twine-thread to uphold it."

We have in this state several cases to the effect that, even where there is no confidential relation, one party to a sale may without direct misrepresentation be guilty of fraud by means of words or acts calculated and intended to produce a false impression, and which do in fact deceive and induce the sale. *Howard* v. *Gould*, 28 Vt. 523; *Graham* v. *Stiles*, 38 Vt. 578; *Chamberlin* v. *Fuller*, 59 Vt. 247, 257, 9 Atl. 832.

In the case before us the positive representation, mainly relied upon as fraudulent, related to value. Such a representation is ordinarily a matter of opinion and is not deemed fraudulent. But it may be otherwise. If it is made as an assertion of fact and with the purpose that it shall be so received, and it is so received, it may amount to a fraud. A statement of value may be of such a character, may be so made and intended and so received, as to constitute fundamental misrepresentation. *Belka* v. *Allen*, 82 Vt. 456, 74 Atl. 91; *Stone* v. *Robie*, 66 Vt. 245, 29 Atl. 259; *Howard* v. *Edgell*, 17 Vt. 9; *Brown* v. *Sawyer*, 1 Aikens 130; *Hetland* v. *Bilstad*, 118 N. W. 422 (Iowa) 2 Cooley, Torts, (3rd Ed.) 922.

Here some of the allegations are that the defendant Beedle represented that the pasture in question was worth no more than $400, and the entire farm not more than $4,000, that he lived near the land in question and represented that he knew the value of lands in that vicinity, whereas in fact the so-called pasture, the thing coveted, was worth thirty or forty times the

value stated, because of the undeveloped granite quarry, of which the defendants had knowledge, and of which the oratrix, who had never seen the farm, was, to the knowledge of the defendants, ignorant. The bill, too, sets out that the representations as to value were accompanied with false representations as to the accessibility of the land and the object of the purchase calculated to allay suspicion and to ward off inquiry and investigation; and here the statements of value, put forth as based on knowledge and accompanied with the talk, set forth at length in the earlier part of this opinion, were fraudulent representations. They were calculated and intended to impose upon the oratrix and to enforce the conviction that what was in fact a valuable tract of quarry land was a mere pasture and a poor pasture at that, and to lead the oratrix into selling something which she did not know she was selling.

Pollock in his work on Contracts, after treating of misrepresentation and fraud in ordinary cases of sales adds: "All this proceeds on the supposition that the vendor's property and title are best known to himself, as almost always is the case. But the position of the parties may be reversed. A person who becomes the owner of a property he knows very little about may sell it to a person well acquainted with it, and in that case a material misrepresentation by the purchaser makes the contract, and even an executed conveyance pursuant to it, voidable at the vendor's option." Williston's Wald's Pollock on Contracts, 670.

The case cited as authority for this proposition is one in which the false representations of the purchaser related to the question of value.

It is urged in behalf of the defendant that it does not appear from the allegations of the bill how the oratrix was in any way hindered or prevented from ascertaining the existence of the quarry and the value of the pasture and the farm. The allegation in the bill is that the oratrix was induced to forbear inquiry in those respects, and the bill sets out with sufficient particularity how she was so induced.

It is further urged that since the conveyance was made in pursuance of an option, and since the oratrix forbore investigation in the interval between the option and the deed she is in no position to maintain the bill. But the bill alleges that the

same fraudulent representations and active concealment on which the oratrix relied in giving the option, and which induced her to give the option, were relied on by her in giving the deed and induced her to forbear investigation before so doing.

It is made a ground of demurrer that the bill is inconsistent in that it alleges, both that the granite quarry is of great value, and also that it is undeveloped; and it is said that there can be no such thing as an undeveloped quarry of great value, and that the court should take judicial notice that such is the fact; and Webster's definition of a quarry to the effect that a quarry is a place whence stone is taken is quoted. But in the bill the word "quarry" is modified by the word "undeveloped" and the phrase "an undeveloped granite quarry" naturally signifies a place from which granite may be taken. An undeveloped quarry is like an undeveloped mine, and in the cases cited on both sides, the courts talk very much in the language of the bill. There are no verbal difficulties here.

It is urged that the oratrix ought not to have relied upon the representations of the defendants, though such representations were fraudulent, because actual knowledge of their falsity could have been obtained by due diligence and inquiry, and that to afford the oratrix relief would encourage culpable negligence. The Vermont cases relied on to support this claim are the following: McDaniels v. Bank of Rutland, 29 Vt. 230; Durkee v. Durkee, 59 Vt. 70, 8 Atl. 490; Town of Ripton v. McQuivey's Admr., 61 Vt. 76, 17 Atl. 44.

But these were cases where there was no fraud or circumvention, and it is not for courts of equity to relieve a party from the mere results of his own carelessness, negligence or laches not induced by the conduct of the other party. Hyde v. Hyde, 50 Vt. 301; Freeman v. Holt, 51 Vt. 538; Francis v. Parks, 55 Vt. 80; Bishop v. Allen, 55 Vt. 423.

But if a party is led to forbear inquiry by false representations as to matters material and not collateral, intentionally made with knowledge of their falsity for the purpose of inducing such forbearance or by fraudulent artifice or deceitful manoeuvres resorted to with the like knowledge and purpose, upon which he in fact relies the question of whether a careful and prudent man would have been misled in like circumstances is immaterial. Chamberlin v. Fuller, 59 Vt. 247, 256, 9 Atl.

832; *Chamberlain* v. *Rankin*, 49 Vt. 133; *Delaney* v. *Brown*, 72 Vt. 344, 47 Atl. 1067; *Kendall* v. *Wilson*, 41 Vt. 567.

The case last cited grew out of a transaction the memory of which is still green in a section of the state. The plaintiffs therein bought a machine called "Leache's curious invention called perpetual motion," which was in fact a machine operated by deftly concealed clock work. It was held that the plaintiffs were not as matter of law chargeable with knowledge that they were buying a humbug. "For," said Judge Steele in delivering the opinion of the court, "the law will afford relief even to the simple and credulous who have been duped by art and falsehood." Still more emphatic is the language of Judge Taft, speaking for the court, in *Chamberlin* v. *Fuller*, above cited.

The doctrine of the cases just above cited is now clearly discerned though there has been some confusion about it. Bigelow after adverting to this confusion says: "It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent. In reality negligence is beside the case where the misrepresentation was calculated to mislead and did mislead. For it is not just that a man who has deceived another should be permitted to say to him, 'you ought not to have believed or trusted me,' or 'you were yourself guilty of negligence.'" "Nor," continues this text writer, "is the rule applicable merely to cases which in some respects stand upon special grounds as e. g. suits for specific performance; it applies to rescission equally, and indeed is a general rule." 1 Bigelow, Frauds, 524, 525.

The doctrine inconsistent with that which has been declared by this Court is said by the writer last quoted to be dead in England if it ever existed there and to be moribund in this country. His exact words are not quoted for they are not at the moment of writing at hand.

So Sir Frederick Pollock says: "In the case of active misrepresentation it is no answer in proceedings either for damages or for setting aside a contract to say that the party complaining of the misrepresentation had the means of making inquiries," and he quotes the principle that "no man can complain that another has too implicitly relied on the truth of what he himself has stated." Williston's Wald's Pollock on Contracts, 693, 694.

In a House of Lords case this principle was thus declared by Lord Chancellor Chelmsford: ''When once it is established that there has been any fraudulent misrepresentation or wilful concealment by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector, 'You at least, who have stated what is untrue, or have concealed the truth for the purpose of drawing me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty.' '' *Central Ry. Co. of Venezuela* v. *Kisch,* L. R. 2 H. L. 99, 120.

This is the expression of no obscurantist. The bare statement proves itself. It expresses a doctrine the soundness of which the sages and votaries of the common law perceived, not always altogether clearly, but with a vision which sufficed. Any different doctrine carried to its logical conclusion would facilitate transactions in gold bricks, salted mines, bogus diamonds as real, facsimiles as originals, and would permit a variety of things destructive of commercial integrity. The maxim which requires a party to a trade to look out for himself has a wise and broad application. We would not traduce it or deny to it the legitimate application to which it is entitled. But it cannot be permitted that that maxim should be so construed as to portray the law in caricature and to render it an instrument of craft, a tool of fraud, a talisman of injustice, a key by the use of which one man may plunder another. For the commerce of the world is promoted not by cunning but by such wisdom as is consistent with that good faith which underlies everything in the social order that has stability.

Whether in a given case a party did rely upon the misrepresentations of another instead of upon his own judgment and knowledge or means of knowledge is a question of fact to be determined upon a hearing, and where the allegations are such as are here made a defendant cannot prevail on demurrer. *Whitton* v. *Goddard,* 36 Vt. 730; *Hoyt's Admr.* v. *Hanbury,* 128 U. S. 584, 32 L. Ed. 565, 9 Sup. Ct. 176.

*The result is that the decree sustaining the demurrer and adjudging the bill insufficient is reversed and the cause is remanded.*