### Re Estate of Rachael Brown.

January Term, 1946.

Present: Moulton, C. J., Sherburne, Sturtevant, Jeffords, JJ. and Cleary, Supr. J.

Opinion filed February 5, 1946.

*Raymond T. Shepard* and *Martin S. Vilas* for proponent.

*Louis Lisman* and *K. Paul Fennell* for contestant.

SHERBURNE, J. This was a hotly contested will case resulting in a verdict for the contestant. At the outset of the trial below there were three issues, proper execution, mental capacity and undue influence, but during the trial the contestant conceded proper execution and mental capacity, and undue influence was the only issue submitted to the jury.

Taking the evidence most favorably to the contestant the following facts appeared. Rachael Brown, the testatrix, died on April 12, 1943, at the age of 77 years. The contestant was a great nephew of her late husband, whom she took into her home when he was 11 years old, called him "son" and kept him until he was 15. Later after he had married and had a home of his own he took the testatrix in and cared for her when she had the small pox. About 10 years prior to her death she wasn't feeling well and asked the contestant and his family to come and live with her, and they did so reluctantly. She told him that if he would go to live with her he would be well paid and some day would acquire her property. During the next 10 years he bought all the food and took care of her household expenses mostly, and looked after her business affairs, and his wife attended to her diet and did her laundry. He also took care of her brother to whom she was very much attached. During this time she made two wills making substantial provision for him. In January, 1942, she had a shock and went to the hospital for a short time. Then she returned to her home, where she was confined to her room most of the time. On October 16, 1942, she left to visit at the home of one Chase, where on January 23, 1943, she executed the instrument involved in this litigation. At that time she was suffering from diabetes, shock, hardening of the arteries and heart trouble. This instrument was executed in the testatrix's room in the Chase home, and gave Edward Proulx, her grand nephew, her home property, and Mrs. Chase, upon whom she was dependent for care, the life use of the

upstair tenement therein. Mr. Chase was inquisitive and watched the signing of the instrument through an open door. Edward Proulx called upon the testatrix while she was living with the contestant, and urged her to change the will she had made making the contestant a beneficiary. During the testatrix's last illness while at the hospital and a few days before her death she stated to a witness: "I only wish you had let me go and stay with you to your house for this visit I asked," and upon being asked why stated: "If I had gone to stay with you I never would have changed my will." Upon being asked why she did that she replied: "Because the Proulxs, Eddie and his wife" influenced her. She said: "They pestered me to death to make a change." She said that every time Eddie Proulx talked to her he would ask her to make a change in her will. She said that she didn't want to make the will, but that Proulx and Mrs. Chase made her make it. This evidence of what was said at the hospital was received without objection.

■ The proponents excepted to the refusal of the court to charge the jury as requested in two particulars. An inspection of these requests discloses abstract propositions of law as to the admissibility of certain evidence, without any suggestions as to how it applied to the case on trial. The court could not comply literally, because abstract instructions are condemned, for the reason that they are quite as apt to confuse the jury as to clarify their minds as to the legal aspects of the case before them. *Johnson* v. *Moore,* 109 Vt 282, 287, 196 A 246; *Russell* v. *Pilger,* 113 Vt 537, 540, 37 A2d 403; *Green* v. *Stockwell,* 87 Vt 459, 464, 89 A 270; *State* v. *McDonnell,* 32 Vt 491, 536. Error is not shown.

■■ The proponents filed a motion to set aside the verdict because contrary to the evidence and because there was no evidence to support it. The motion was denied both as a matter of discretion and as a matter of law, and the proponents excepted. The second ground is the same in nature and substance as a motion for a directed verdict. *Belock* v. *State Mutual Fire Ins. Co.,* 106 Vt 435, 439, 440, 175 A 19. It needs no analysis of the facts which we have recited to show that there was sufficient evidence to support the verdict. Some of the evidence may have been hearsay, but as it was received without objection it was for consideration. *Montpelier* v. *Calais,* 114 Vt 5, 11, 39 A2d 350. The motion was properly denied upon this ground.

The first ground of the motion was addressed to the court's discretion. *Belock* v. *State Mutual Fire Ins. Co., supra.* In order for us to upset a verdict it must appear from the record that the evidence so preponderates against the verdict as to leave no reasonable basis upon which it can stand. *Belock* case, *supra,* at p. 443. There can be no question here. The motion was properly denied upon this ground also.

*Judgment affirmed, to be certified to the Probate Court.*