## Amaro Silva and Jean Silva v. John Stevens, Glendon McAllister and Joyce McAllister

[589 A.2d 852]

No. 88-197

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed January 11, 1991

Motion for Reargument Denied February 11, 1991

*Charles D. Hickey,* St. Johnsbury, for Plaintiffs-Appellees.

*Montgomery L. Moore,* Island Pond, for Defendant-Appellee Stevens.

*Rexford & Kilmartin,* Newport, for Defendants-Appellants.

**Dooley, J.** Plaintiffs, Amaro and Jean Silva, purchased an earth-sheltered home from defendants, Glendon and Joyce McAllister, through defendant John Stevens, a local realtor. On finding defects in the home, plaintiffs sued defendants for damages caused by misrepresentations made prior to the sale. The McAllisters appeal from a jury verdict awarding damages against them for fraudulent misrepresentation, fraudulent nondisclosure and negligent misrepresentation. We affirm. Plaintiffs cross-appeal from the trial court's grant of a motion for judgment notwithstanding the verdict in favor of Stevens after the jury returned a verdict holding him liable for negligent misrepresentation. We reverse and remand.

In 1977, the McAllisters built and occupied an earth-sheltered home in Coventry, Vermont. During the seven years they lived in the home they experienced leaks in the ceiling, moisture problems around a picture window, and seepage around the chimney. They also experienced difficulties with a garage they had added in 1979. After they had the rear wall of the garage backfilled, the wall bowed inwards and developed cracks. When the McAllisters discovered the problem, they braced the wall with I-beams.

In May 1984, the McAllisters decided to sell the home. They contacted Stevens, and on May 13, 1984, Stevens and the McAllisters signed a listing agreement. Stevens drafted an advertisement for an "open house" on June 3 at the McAllister home and ran it in a local paper. Stevens based the advertisement on information he obtained in conversations with Mr. McAllister. The advertisement stated, in part:

—Sale Includes—

A 28' x 60' Earth Sheltered Home built to the strictest standards with 4,000 feet of steel in the roof, on 10" x 24" footings, and 12" x 48" frost wall. The home is fully insulated in and out. . . . Also a three-car garage and shop with full second floor. Functional and well-constructed. . . . EVERYTHING WILL BE SOLD FOR JUST $64,000—please come out and look—

It is unclear whether Mr. McAllister used the specific terms "strictest standards" and "well constructed" in describing the property to Stevens.

The McAllisters sent a copy of the advertisement directly to plaintiffs, who had visited the home in the past and had asked Mr. McAllister about the possibility of his building an earth-sheltered home for them. Mr. McAllister had planned to build the Silvas a home, but decided "we might as well sell [them] this one."

Plaintiffs received the ad and thought that the home "sounded good," so they called the McAllisters. They agreed on a sales price of $60,000. On June 9, plaintiffs drove to Coventry and were shown around the property by the McAllisters. During the visit, Mr. McAllister told plaintiffs that there had been a leakage problem with the skylight and the chimney in the past, but that he had repaired the problem. Mr. McAllister also showed Mr. Silva the garage and told him that the I-beams were there to reinforce the rear wall. Mr. Silva apparently accepted these explanations and did not inquire further. In response to a question from Mrs. Silva, Joyce McAllister said that they did not have any dampness problems with the home.

Immediately after the visit, plaintiffs and the McAllisters went to Stevens' office. Plaintiffs had brought a check for $5,000 as a deposit. Stevens offered to show them the property, but they declined. Stevens had the parties sign a sales agreement which included a provision that "[t]he property and furnishings and appliances are sold as is and no representation has been made by the broker regarding the age or condition of the same." The parties differ as to whether plaintiffs were aware of, or whether the parties ever discussed, this language.

The sale was closed on August 31, 1984, and plaintiffs' daughter and her family took occupancy the following day. Within two

months they began to have difficulties. They discovered mold in closets, rot beneath carpeting, and leaks in the middle bedroom ceiling, around the skylight, and around the chimney. They found water pooling in the garage, and found that the rear wall of the garage had cracked and bowed in until it put pressure on the I-beams.

Plaintiffs hired an architect, Don Metz, to inspect the home. Metz determined that the roof of the home was improperly sealed and was, therefore, not waterproof; there was insufficient insulation; there was inadequate ventilation to provide for air exchange; and there were no secondary exits for escape in case of fire. He also determined that the rear wall of the garage was not designed to support the weight pressing against it from backfill. Plaintiffs hired local contractors to repair the roof of the home and to repair the garage. They also had an air exchanger installed.

In 1985, plaintiffs brought suit against defendants McAllister and Stevens. The complaint, as eventually amended, alleged that the representations in the advertisement that the home was built to the "strictest standards" and that the garage was "well constructed" were false, had been made fraudulently, and were relied upon by plaintiffs. Plaintiffs sought compensatory and punitive damages based on the fraud. Plaintiffs also alleged that the misrepresentations were made in a careless and negligent manner and sought damages for this negligence. In two additional counts, plaintiffs alleged that the McAllisters had stated that they had fixed a roof leak prior to closing, when they had not, and that a suspended ceiling had been erected to fraudulently conceal the actual condition of the roof. Damages were sought under each of these counts.

Defendants were granted a directed verdict on the fraudulent concealment count at the close of the plaintiffs' case. The trial was lengthy, extending over a month. The court charged the jury on three "counts," each based on a separate theory of recovery: (1) fraud based on fraudulent misrepresentations; (2) fraud based on fraudulent nondisclosure; and (3) negligent misrepresentation. The court drafted a set of special interrogatories to present the issues to the jury. For each of the three counts, the court asked whether the jury found each of the defendants guilty. However, for the second count of fraudulent

nondisclosure, the interrogatories allowed the jury to find liability only for Glendon McAllister and Joyce McAllister. Two additional interrogatories asked the jury to specify the amount of plaintiffs' recovery for compensatory and punitive damages if the jury found liability with respect to any defendant on any count.

The jury returned a verdict against the McAllisters on all three counts, and against Stevens on the claim of negligent misrepresentation. The jury assessed compensatory damages at $21,000 and punitive damages at $15,000.

The trial court denied all post-verdict motions filed by the McAllisters, but granted Stevens' motion for judgment notwithstanding the verdict. The trial court found that the "as is" clause in the sales contract established an affirmative defense for Stevens to the negligent misrepresentation claim.

The McAllisters' appeal raises the following issues: (1) whether the trial court erred in failing to grant the McAllisters' motion for a directed verdict; (2) whether the trial court erred in its charge and interrogatories to the jury; (3) whether liability on the negligent misrepresentation theory was barred by the "as is" clause in the listing agreement; (4) whether an evidentiary ruling or the comment of a court officer to a juror warrant a new trial; and (5) whether the jury's answers to the interrogatories are internally inconsistent. Plaintiffs' cross-appeal contests the grant of the judgment notwithstanding the verdict in favor of Stevens on the claim for negligent misrepresentation. In the following discussion, we refer to the McAllisters as "defendants" and to Stevens by name.

## I.

Defendants first contest the trial court's refusal to grant them a directed verdict on all three counts. They argue that there was insufficient evidence to reach the jury on most of the elements of the counts.

In reviewing a trial court's denial of a directed verdict, this Court will view the evidence in the light most favorable to the nonmoving party, excluding the effect of any modifying evidence. *Cushman v. Kirby*, 148 Vt. 571, 574, 536 A.2d 550, 552 (1987). "If there is any evidence fairly and reasonably support-

ing the nonmoving party's claim, the case should go to the jury, and a directed verdict would be improper." *Lussier v. North Troy Engineering Co.*, 149 Vt. 486, 490, 544 A.2d 1173, 1176 (1988).

■ The elements of fraud or intentional misrepresentation are set forth in *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980), as follows:

> An action for fraud and deceit will lie upon an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage.

See also *Quintin v. Miller*, 138 Vt. 487, 489, 417 A.2d 941, 943 (1980).

■■ Taken in the light most favorable to plaintiffs, there was evidence presented at trial that the McAllisters made several representations of fact relating to the condition of the home in the open-house advertisement.[1] There was evidence that the representations were false and that the McAllisters knew they were false, including the testimony by the architect Metz, the testimony that persistent leaks had returned, and the testimony that the I-beams were installed when the garage wall started to bow and crack. There was evidence that the representations were made to induce plaintiffs to enter the contract, including the testimony that the McAllisters sent the advertisement directly to the Silvas and Mrs. McAllister's testimony that "You don't say anything unless you are asked." Further, there was evidence that the true condition of the premises was not open to the Silvas' knowledge. Finally, the claim that plaintiffs relied upon these representations in entering into the contract and that this reliance resulted in their damages is

---

[1] Defendants have not contested that the representations that the home was built to "strictest standards" and the garage was "well constructed" could be taken by the jury to be statements of fact rather than opinion. The question of whether a statement is one of fact or opinion is for the jury to determine. See *Hughes v. Holt*, 140 Vt. 38, 41, 435 A.2d 687, 689 (1981) (evidence sufficient for jury to find that representation that house was in "excellent" condition was one of fact).

supported by testimony of Mr. Silva that he accepted the advertisement claims and that he relied on Mr. McAllister's knowledge of earth-sheltered homes.[2]

Likewise, there was adequate evidentiary support for the fraudulent nondisclosure count. We have set forth the elements of fraudulent nondisclosure, or fraudulent concealment, in a number of recent cases. See, e.g., *White v. Pepin*, 151 Vt. 413, 416, 561 A.2d 94, 96 (1989); *Sutfin v. Southworth*, 149 Vt. 67, 70, 539 A.2d 986, 988 (1987); *Cushman*, 148 Vt. at 574, 536 A.2d at 552. Fraudulent concealment involves concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud. *White*, 151 Vt. at 416, 561 A.2d at 96. Plaintiffs' theory was that defendants' failure to disclose the history of water leaks and their inability to repair them, and the denial that the house had a dampness problem, constituted intentional concealment. Upon review of the record, we conclude that there was ample evidence to support the jury's finding of fraudulent nondisclosure.

Defendants contest, however, that they had any duty to disclose the withheld information in this "arm's-length" transaction. A duty "aris[es] from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge." *Id.* We have found that the duty to speak based on superior knowledge can arise for a seller of a home. *Cushman*, 148 Vt. at 575, 536 A.2d at 552–53. We explained that such a duty would arise "'[w]here material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser.'" *Id.* at 576, 536 A.2d at 553 (quoting *Lawson v. Citizens & Southern Nat'l Bank*, 259 S.C. 477, 485, 193 S.E.2d 124, 128 (1972)). The jury could find the requisite superior knowledge here where the material facts were largely historical and

---

[2] Our conclusion on the intentional misrepresentation count also means there was adequate evidence to support each element of the negligent misrepresentation claim. See Restatement (Second) of Torts § 552(1) (1977) (outlining elements of negligent misrepresentation). We have, therefore, not discussed this count.

plaintiffs had limited ability to determine them.[3] We also emphasize that this is a partial disclosure case, like that analyzed in *Crompton v. Beedle*, 83 Vt. 287, 298, 75 A. 331, 334–35 (1910). See *White*, 151 Vt. at 417, 561 A.2d at 96 (quoting *Crompton*); *Cushman*, 148 Vt. at 574, 536 A.2d at 552 (same). Thus, defendants' partial disclosure that leaks had been present, but were repaired, could be found to be actionable fraud under the *Crompton* standard even absent a special duty to disclose the remaining information.

■ Defendants raise a number of specific arguments in support of the claim that their directed verdict motion should have been granted. First, defendant Joyce McAllister argues that there was insufficient evidence to find her liable for fraud or negligent misrepresentation even if there was enough evidence with respect to her husband. We have found no liability against a wife in a property sales case where "[t]here is no finding nor is there evidence that [defendant wife] had actual knowledge of the problem or participated in the concealment." *Sutfin*, 149 Vt. at 71, 539 A.2d at 988; see also *Quintin v. Miller*, 138 Vt. at 490, 417 A.2d at 943 (where husband fraudulently concealed information to induce insurance company to extend coverage, wife not liable since she did not engage in any misrepresentation). The jury could find in this case that Joyce McAllister participated in the decision to send the advertisement to plaintiffs and that she participated in the concealment. There is no ground to separate her from her husband for purposes of the directed verdict motion.

■ ■ Defendants next argue that plaintiffs were negligent in failing to discover the falsity of the representations or concealments as a matter of law and are barred from recovery under *Vezina v. Souliere*, 103 Vt. 190, 194, 152 A. 798, 800 (1931) (recovery barred where "a vendee has [not] used the care and diligence required of him . . . in determining the falsity of the

---

[3] The trial court did grant a directed verdict on the alleged claim that the placement of a suspended ceiling, which made it difficult to examine the inside of the roof, was a fraudulent concealment. Despite the court's disposition of this count, the court and jury could consider the presence of the suspended ceiling as evidence of plaintiffs' inability to observe the defects in the roof.

representations"). Contrary to defendants' suggestion, however, negligence on the part of plaintiffs is not an absolute defense to fraudulent misrepresentation.[4] We have emphasized that it is not a defense that "'plaintiff might, but for his own neglect, have discovered the wrong.'" *White*, 151 Vt. at 420, 561 A.2d at 98 (quoting *Lunnie v. Gadapee*, 116 Vt. 261, 265, 73 A.2d 312, 315 (1950)); see also *Negyessy v. Strong*, 136 Vt. 193, 195, 388 A.2d 383, 385 (1978) (per curiam). Nevertheless, we have held that "where it is clear from the full text of a representation or from facts about the relationship of the parties that reliance should only follow an independent inquiry," such an inquiry must be made. *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 241, 515 A.2d 371, 374 (1986) (misrepresentation claim under Vermont Consumer Fraud Act). Although defendants have an argument that independent inquiry was required here, it is no ground to grant a directed verdict.[5]

Next, defendants argue that they should have received a directed verdict on the fraudulent concealment count because plaintiffs failed to plead the specifics of this theory of recovery. Defendants rely on V.R.C.P. 9(b), which requires that when fraud is alleged "the circumstances constituting fraud . . . shall be stated with particularity." The rule requires that the facts and circumstances sufficient to satisfy all of the elements of fraud be specifically pled. *Cheever*, 138 Vt. at 570, 421 A.2d at 1289; 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1297, at 590 (1990).

Rule 9(b), however, is subject to the liberal amendment provisions of V.R.C.P. 15. See 5 C. Wright & A. Miller, *supra*, § 1300, at 661 (addressing identical federal rule). Under

---

[4] As discussed at note 7, *infra*, defendants attempted to raise plaintiffs' negligence as a defense to their negligent misrepresentation claim. The court refused to allow the jury to consider this defense because it had not been pled. Defendants have not appealed this ruling.

[5] As discussed above, there is generally a duty of "diligent attention, observation and judgment" as a prerequisite to a fraudulent concealment claim. *Cushman*, 148 Vt. at 576, 536 A.2d at 553. Relying on *Cheever v. Albro*, 138 Vt. 566, 572, 421 A.2d 1287, 1290 (1980), we stated in *White*, 151 Vt. at 420, 561 A.2d at 98, that the concealed information must be unavailable in the exercise of due diligence. Based on the evidence presented in the case at hand, we cannot say as a matter of law that evidence of due diligence was lacking.

V.R.C.P. 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The situation here is somewhat unusual because the express fraudulent concealment count in plaintiffs' original complaint was dismissed on defendants' motion for a directed verdict. At trial, defendants failed to object to the introduction of evidence of their concealment of material facts, thereby impliedly consenting to trial of these issues. In addition, the court charged the jury that they could find fraudulent nondisclosure, that is, fraudulent concealment, and defendants did not object to that part of the charge.[6] The evidence was admitted and was properly considered by the jury. Although we are not privy to the exact reasoning of the court, it must have treated the pleadings as if they had raised these issues. See, e.g., *Lemnah v. American Breeders Service, Inc.*, 144 Vt. 568, 577–78, 482 A.2d 700, 705–06 (1984); *Valsangiacomo v. Paige & Campbell, Inc.*, 136 Vt. 278, 280, 388 A.2d 389, 391 (1978). Moreover, one of the primary objectives of Rule 9(b) is to provide the defendant with sufficient information to enable him or her to effectively prepare a response. See 5 C. Wright & A. Miller, *supra*, § 1296, at 580. This objective was satisfied here, as the pleadings otherwise complied with the Rule by specifying the elements of plaintiffs' fraudulent misrepresentation theory.

Finally, defendants argue that the jury's exoneration of Stevens on the fraudulent misrepresentation count required the trial court to render a directed verdict for them on this count. Defendants fail to recognize that different standards apply to the liability of themselves, as sellers, and to Stevens, as the broker. This Court has held that "a real estate broker is not guilty of fraud for making untrue statements to a buyer based upon information supplied by the seller, if the broker did not know the information was untrue." *Provost v. Miller*, 144 Vt. 67, 69, 473 A.2d 1162, 1163–64 (1984); see also *Cunningham v.*

---

[6] Defendants have supplied us with only a partial transcript of the charge conference. In the part that was transcribed, defendants were given the opportunity to object to the proposed charge and did so. They objected, however, only to the fraudulent and negligent misrepresentation counts, and not to the concealment count. Their further objection after the charge was also related to those counts only.

*Miller*, 150 Vt. 263, 266, 552 A.2d 1203, 1205 (1988). On the other hand, a seller is responsible for the representations of his or her broker made within the scope of the broker's selling authority. See *Denlinger v. Mudgett*, 151 Vt. 208, 209, 559 A.2d 661, 662 (1989).

Viewing the evidence in the light most favorable to plaintiffs, a reasonable jury could have found that Stevens received the information he used in the advertisement from the McAllisters, and that he neither knew, nor had reason to know, that the information was untrue. They further could find that he acted within his authority in preparing the advertisement and that defendants were aware of its terms when they sent it to plaintiffs. There is no inconsistency in the verdicts.

## II.

Defendants next attack the jury instructions and interrogatories. They first assert error in the failure of the instructions to specify the statements plaintiffs claimed as misrepresentations and the nondisclosures that were claimed to form the basis of the fraudulent concealment count. With respect to this argument, defendants did object to the instructions on the fraudulent and negligent misrepresentation counts. They did not make an objection to the instructions on the fraudulent concealment count. Thus, they have waived any objection to the fraudulent concealment instructions. V.R.C.P. 51(b); see *United Railway Supply & Service, Ltd. v. Boston & Maine Corp.*, 148 Vt. 454, 457, 535 A.2d 325, 326 (1987).

The misrepresentation instructions failed to specify plaintiffs' theory of the case or the factual claims supporting it. They bordered on the type of abstract instructions on the law which this Court has found unacceptable in the past. See *In re Estate of Brown*, 114 Vt. 380, 382, 45 A.2d 568, 569 (1946) (affirming trial court's refusal to adopt proposed instructions: "[A]bstract instructions are condemned, for the reason that they are quite as apt to confuse the jury as to clarify their minds . . . ."). On the other hand, "[i]t is not error if the court does not make every conceivable comment that could be made on the issues and evidence. How far the court must elaborate lies within the sound exercise of its discretion." *Turgeon v.*

*Schneider*, 150 Vt. 268, 276, 553 A.2d 548, 553 (1988). Further, "[a] party claiming error in jury instructions must establish not only that they were erroneous but that prejudice resulted." *Id.*

 While it would have been preferable for the trial court to specify plaintiffs' theory of misrepresentation, and we might find error in another context for failing to do so, there was no prejudice demonstrated here. Plaintiffs' theory of the case was clear from the beginning and was never changed or expanded. In their closing argument, plaintiffs argued only from the statements in the advertisement. We think the jury was well aware of plaintiffs' claims and was not confused by the failure to state them more clearly in the instructions.

 Defendants also objected to the charge on the negligent misrepresentation count, claiming error on the issue of whether plaintiffs justifiably relied on the representations. Defendants argue that the trial court should have instructed the jury that a reasonable person standard was to be applied in determining justifiable reliance. The tort of negligent misrepresentation requires that the plaintiff show "justifiable reliance upon the information" provided by the alleged tortfeasor. Restatement (Second) of Torts § 552(1) (1977). We agree that "justifiable reliance" connotes an objective standard. See *id.*, comment a. The trial court instructed the jury "[p]laintiffs may justifiably rely upon a representation when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by the plaintiffs." This instruction was adequate on the issue of justifiable reliance, and it was within the trial court's discretion to decide whether to elaborate.[7] There was no error.

Defendants' next claim deals with the interrogatories and the absence of a general verdict. As discussed above, the interrogatories asked the jury to specify for each theory whether

---

[7] The trial court concluded that in making this objection, defendants were trying to raise a defense of plaintiffs' contributory negligence. 12 V.S.A. § 1036; Restatement (Second) of Torts § 552A (1977) (contributory negligence is a defense to negligent misrepresentation). The court ruled that contributory negligence had not been pled, and, therefore, could not be submitted to the jury. See V.R.C.P. 8(c) (affirmative defenses must be specifically pled). Defendants have not appealed that decision.

each defendant was liable. Since there were three defendants and three theories, that would normally involve nine liability interrogatories. However, because the court determined that Stevens could not be found liable on the theory of fraudulent nondisclosure, there were only eight. These liability interrogatories were followed by two damage interrogatories, to be answered only if the jury found liability on any of the theories against any of the defendants. The first asked the jury to specify the sum necessary to "fairly and reasonably compensate these plaintiffs for their damages." The second asked the jury to specify its award of punitive damages, if any. There were no general verdicts.

The jury found liability with respect to each defendant on each applicable count except that it did not find Stevens liable for fraudulent misrepresentation. It found that plaintiffs were entitled to $21,000 in compensatory damages and $15,000 in punitive damages.

The interrogatories were reviewed by the parties, and no objection was made to them. The rendering of the verdict consisted of the foreman's reading of the interrogatory answers. Following that reading, counsel were asked if they had anything further. Defendants asked for a polling of the jury but did not object to the form of the verdict.

Defendants' position here is that the failure to include a general verdict with the interrogatories violated V.R.C.P. 49(b). We agree that the interrogatories do not comply with V.R.C.P. 49(b) because they are not accompanied by a general verdict as required by that rule. If we assess their adequacy under V.R.C.P. 49(a), which does not require a general verdict, see *Simien v. S. S. Kresge Co.*, 566 F.2d 551, 556 (5th Cir. 1978) (where special interrogatories were unaccompanied by general verdict form, validity determined under Fed. R. Civ. P. 49(a) (which is identical to Vermont rule)), they do not comply because they do not require a "special written finding upon each issue of fact." Although we agree that the verdict here does not comply with Rule 49, we believe that defendants waived the issue by failing to object before the jury was discharged.

Generally, objections to verdict forms must be presented to the trial court in time to allow an opportunity to take corrective action. See *Mainieri v. McLellan*, 125 Vt. 157, 158,

211 A.2d 239, 240 (1965) (per curiam). Similarly, errors in interrogatories can be raised here only if the party claiming error seasonably objects before the trial court. *Hartnett v. Union Mutual Fire Ins. Co.*, 153 Vt. 152, 159–60, 569 A.2d 486, 489–91 (1989); V.R.C.P. 51(b). We think these principles required defendants to object to the absence of a general verdict while the trial court still had an opportunity to correct the error.

In reaching this conclusion, we are aware that Rule 49 provides at least two avenues for the trial court to render judgment despite the absence of a general verdict. Where interrogatory responses are consistent, as here, Rule 49(b) allows entry of judgment in accordance with the answers to the interrogatories even if the general verdict is inconsistent with those answers. A similar remedy should be available where the general verdict is missing. As an alternative, Rule 49(a) allows the court to treat the failure of a party to object to the omission of a factual issue from special interrogatories as a waiver of trial by jury with respect to that issue. Thus, the court is allowed to make any finding necessary to allow the issuance of a judgment.

### III.

Defendants' next claim is that the "as is" clause in the sales contract was a complete defense to liability on the negligent misrepresentation claim and, in any event, the trial court was required to grant a judgment notwithstanding the verdict (j.n.o.v.) for them on this theory when it granted a j.n.o.v. for Stevens. This argument is considered below in connection with plaintiffs' cross-appeal against Stevens. Since we find that the trial court was in error in granting Stevens a j.n.o.v., there was no error in denying judgment to defendants on the basis of the "as is" clause.

### IV.

Finally, defendants argue that they should have been granted a new trial based on an evidentiary error and on a communication to a juror by a court officer. The asserted evidentiary error involved the trial court's exclusion of a letter written by an attorney for plaintiffs, and its refusal to allow examination of the recipient of the letter, an attorney for defendants, as to its contents.

The letter at issue is dated September 12, 1984, twelve days after the closing on the home, and concerned requests that the McAllisters had made, after the closing, concerning maintenance of the home. It also mentioned that the windows of the home were not triple glazed, as they had been described in the sales contract. The trial court ruled that the contents of the letter were not relevant and barred from evidence the letter and testimony as to its contents.

██ ██ "The decision to admit evidence lies within the sound discretion of the trial court and will not be overturned on appeal absent a showing of an abuse of that discretion, or a showing that the court's discretion was unjustly withheld." *State v. Bushey*, 149 Vt. 378, 380, 543 A.2d 1327, 1328 (1988). The letter was marginally relevant, at best, and it was within the court's discretion to exclude it.

██ Defendants' second ground for a new trial is that a statement made by a court officer to a juror was prejudicial. The remark was made to one of the jurors after the jury left the courtroom to begin deliberations. According to defendants, a juror had asked the court officer if the jury could find Mrs. McAllister liable but not find Mr. McAllister liable and the officer responded: "They own all the property together." The court questioned the officer, who denied making the statement. The officer stated that he told the juror "you will have to go with the rest of the group in believing something." The court then recalled the jury and told them to ignore the remark. This was done without objection from any of the parties. Since defendants failed to object to the court's curative instruction at trial, it is not preserved on appeal. See *State v. Bartlett*, 137 Vt. 400, 404, 407 A.2d 163, 165–66 (1979) (claim of error based on misconduct of court officer raised for first time in post-trial motions).

## V.

Plaintiffs cross-appeal from the trial court's grant of a j.n.o.v. in favor of defendant Stevens. The trial court ruled that the "as is" clause contained in the contract for sale provided Stevens with an affirmative defense to plaintiffs' claim for negligent misrepresentation. The clause provided that "[t]he property

and furnishings and appliances are sold as is and no representation has been made by the broker regarding the age or condition of the same."

In support of its holding, the trial court relied on *Lamoille Grain Co. v. St.J. & L.C. R.R.*, 135 Vt. 5, 369 A.2d 1389 (1976). In *Lamoille Grain Co.*, this Court upheld language in an indemnity clause of a contract which purported to excuse a railroad from any liability for damage, injury or loss caused by the railroad. *Id.* at 7, 369 A.2d at 1390. We stated that "[w]here the language of the agreement is clear, the intention and understanding of the parties must be taken to be that which their agreement declares." *Id.* at 8, 369 A.2d at 1390. We concluded that the language of the contract was "sufficiently clear to show the parties' intent that the railroad be held harmless for damages caused by its own negligence." *Id.*

 We do not believe that the holding of *Lamoille Grain Co.* governs this case. The term "as is" is language which in "common understanding" means that there are no implied warranties in connection with the property sold. Cf. 9A V.S.A. § 2—316(3)(a) (exclusion or modification of warranties with respect to sales of goods). It does not denote an exclusion of tort liability. See *Kopischke v. First Continental Corp.*, 187 Mont. 471, 484–85, 610 P.2d 668, 675 (1980). Indeed, it does not address tort liability at all. Consistent with that view, the law is clear that the presence of an "as is" clause in a sales contract does not as a matter of law defeat a fraud claim. See *Slater v. KFC Corp.*, 621 F.2d 932, 935 (8th Cir. 1980) (Missouri law); *L. Luria & Son, Inc. v. Honeywell, Inc.*, 460 So. 2d 521, 523 (Fla. Dist. Ct. App. 1984); *Bill Spreen Toyota, Inc. v. Jenquin*, 169 Ga. App. 855, 856, 294 S.E.2d 533, 536 (1982) (en banc); *Moore v. Swanson*, 171 Mont. 160, 166–67, 556 P.2d 1249, 1253 (1976); *MacFarlane v. Manly*, 274 S.C. 392, 395, 264 S.E.2d 838, 840 (1980). The same principle applies if the claim is based on negligence or strict liability. See *Badger Bearing Co. v. Burroughs Corp.*, 444 F. Supp. 919, 923 (E.D. Wis. 1977), *aff'd*, 588 F.2d 838 (7th Cir. 1978) (negligent misrepresentation); see also *Vicon, Inc. v. CMI Corp.*, 657 F.2d 768, 775 (5th Cir. 1981) (tortious misrepresentation without intent or negligence; Tennessee law); *Archuleta v. Kopp*, 90 N.M. 273, 275, 562 P.2d 834, 836 (Ct.

App.) (innocent misrepresentation), *cert. denied*, 90 N.M. 636, 567 P.2d 485 (1977).

■ We accept that the presence of the "as is" clause in the contract is relevant to whether Stevens made misrepresentations and to whether plaintiffs reasonably relied on them. However, when we review the grant of a j.n.o.v. motion under V.R.C.P. 50(b), we must view the evidence in the light most favorable to the nonmoving party, excluding the effect of any modifying evidence. If any evidence was produced at trial which fairly and reasonably supports the nonmoving party's claim, the grant of a j.n.o.v. is improper. *Kinzer v. Degler Corp.*, 145 Vt. 410, 412–13, 491 A.2d 1017, 1018–19 (1985).

The jury in this case was fully charged on the elements of negligent misrepresentation and on plaintiffs' burden to show that Stevens misrepresented the condition of the house and garage and that plaintiffs reasonably relied on Stevens' misrepresentations. The "as is" language was contained in the contract for sale prepared well after the advertisement on which plaintiffs relied and after plaintiffs had decided to purchase the house. There was some dispute as to whether plaintiffs even saw the language. In sum, the jury could have found the clause irrelevant to the question of justifiable reliance. Further, the jury could have attempted to reconcile the specific language of the advertisement and the clause in the contract. Cf. 9A V.S.A. § 2—316(1) (words creating express warranty and words "tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other"). In reconciling the language, it is important to note that if the contract language "no representation has been made by the broker regarding the . . . condition of the [property]" applies to the advertisement, it is at variance with the undisputed facts.

■ The trial court was in error. The presence of the "as is" clause in the sales contract did not justify a j.n.o.v. in favor of Stevens as a matter of law. Since it did not warrant a judgment for Stevens, it is likewise of no assistance to the McAllisters.

*The judgment notwithstanding the verdict granted to defendant Stevens is reversed and the judgment against Stevens reinstated. In all other respects, the case is affirmed.*