Marble v. First American Flood Data Services, Inc., No. 87-2-01 Wncv (Teachout, J., July 14, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**
**WASHINGTON COUNTY, SS.**

| | | |
|---|---|---|
| **JAMES W. MARBLE and** | ) | |
| **M. MARTHA MARBLE,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Washington Superior Court** |
| **v.** | ) | **Docket No. 87-2-01 Wncv** |
| | ) | |
| **FIRST AMERICAN FLOOD DATA** | ) | |
| **SERVICES, INC. and** | ) | |
| **BANKNORTH GROUP, INC.,** | ) | |
| **Defendants.** | ) | |

**Decision on Defendants' Motions for Summary Judgment**

Plaintiffs James W. Marble and M. Martha Marble own a home in Waitsfield, Vermont near the Mad River. Plaintiffs obtained a loan secured by a mortgage deed with Defendant Banknorth Group, Inc. in February, 1998. In the course of that transaction, Defendant First American Flood Data Services, Inc. (FDSI), issued a Standard Flood Hazard Determination Form indicating that flood insurance was not required to be purchased on behalf of Banknorth under the National Flood Insurance Program. Shortly thereafter, Plaintiffs sustained severe flood damage to their home when the Mad River flooded in June, 1998; it flooded again the following August. Plaintiffs had never obtained flood insurance. Claiming that the Determination was inaccurate, Plaintiffs allege negligence against each of the Defendants. Both Defendants have filed Motions for Summary Judgment. For the following reasons, Defendants' Motions are granted.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. See V.R.C.P. 56(c)(3). In determining whether a genuine issue of fact exists, the nonmoving party receives the benefit of all reasonable doubts and inferences; however, allegations to the contrary must be supported by specific facts sufficient to create a genuine issue of material fact. See Samplid Enterprises, Inc. v. First Vermont Bank, 165 Vt. 22, 25 (1996). "A summary judgment motion is intended to 'smoke out' the facts so that the judge can decide if

anything remains to be tried." Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir. 1972) (citations omitted). Ordinarily, "summary judgment is improper where the case stands or falls on the inference that may be drawn from these facts-particularly where the inferences depend upon subjective feelings and intent. But this rule applies only where the 'undisputed evidentiary facts disclose competing material inferences as to which reasonable minds might disagree'". Id. at 294, citing Cali v. Eastern Airlines, Inc., 442 F.2d 65 at 71 (2d Cir. 1971).

The following material facts are undisputed. On May 8, 1980, Plaintiffs purchased their home, which sits on the banks of the Mad River. In seven separate transactions between August 29, 1985 and March 23, 1994, Plaintiffs obtained loans secured by mortgage deeds from Banknorth, The Howard Bank (Banknorth's predecessor in interest), and at least one other bank. No lender required flood insurance in any amount in the course of these transactions. For each of these transactions, James Marble was aware that the respective lender had not required flood insurance, but neither of the Marbles recollects ever seeing a "Standard Flood Hazard Determination Form." Prior to 1998, the Marbles never attempted to insure their home against a flood risk.

Under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129, no lender may "make, increase, extend, or renew any loan secured by improved real estate . . . in an area that has been identified by the Director [of the Federal Emergency Management Agency] as an area having special flood hazards and in which flood insurance has been made available under the [Act], unless the building . . . and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan . . . ." 42 U.S.C. § 4012a(b)(1). If at origination or anytime during the term of the loan the lender determines that the property is covered by less than the required amount (if any) of flood insurance, the lender must notify the borrower of the need to obtain additional flood insurance at the borrower's expense. 42 U.S.C. § 4012a(e)(1). If the borrower fails to do so within 45 days of notification, the lender must purchase the required insurance and may charge associated expenses to the borrower. 42 U.S.C. § 4012a(e)(2).

On February 20, 1998, the closing occurred on another loan to the Marbles secured by a mortgage deed. This one was from The Howard Bank (now Banknorth, Defendant herein). Prior to the origination of the loan, Banknorth requested from Defendant FDSI a flood hazard determination indicating whether flood insurance was required by the Act. The request was made electronically using software known as FloodCert which was provided to Banknorth by FDSI. Affidavit of Scott A. Giberson para. 8.

FDSI, a Texas corporation, is in the business of completing Standard Flood Hazard Determination Forms. Banknorth has an agreement with FDSI under which Banknorth obtains all flood hazard determinations from FDSI, and FDSI charges Banknorth a reduced rate of eighteen dollars each. Section 3.2 of the agreement details the remedies provided to Banknorth in the event that FDSI provides an "errant determination." Section 3.2(b) states:

2

If FDSI has incorrectly issued a certification on a property stating that the insurable structure is not located within a Special Flood Hazard Area, but was in fact discovered to be located in a Special Flood Hazard Area per the Flood Map effective as of the date of the certification, FDSI shall compensate [Banknorth] for the cost of any uninsured flood loss suffered by [Banknorth] that would have been paid by an NFIP policy, less any premiums that would have been paid if an NFIP policy had been in effect.

Flood Zone Determination Service Agreement § 3.2(b). "NFIP policy" means "a flood insurance policy underwritten and administered by the National Flood Insurance Program." Agreement § 4.5(f). Section 4.7 states: "Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or give any person or entity other than FDSI and [Banknorth] any rights or remedies under or by reason of this Agreement."

FDSI produced the flood zone determination requested by Banknorth on February 17, 1998, on a one page form entitled "Federal Emergency Management Agency Standard Flood Hazard Determination" and identified as "FEMA Form 81-93, JUN 95." The form identifies the lender and borrower, and the address of the collateral building. The form states that the applicable NFIP Map Number or Community-Panel Number is 500120 0010 D, with an effective date of 09/05/84. The form further indicates that federal flood insurance is available in the regular, as opposed to emergency, program. The determination is located in section D of the form. There, the form states "IS BUILDING/MOBILE HOME IN SPECIAL FLOOD HAZARD AREA (ZONES BEGINNING WITH LETTERS 'A' OR 'V')?" The "NO" box is checked. In the same section, the form states: "If yes, flood insurance is required by the Flood Disaster Protection Act of 1973. If no, flood insurance is not required by the Flood Disaster Protection Act of 1973."

Prior to February 20, 1998, Mr. Marble had never had any interest in flood insurance and had never sought to obtain it. He was not aware of any flood hazard determinations that might have occurred with past loans. At the time of the February 20, 1998 closing, Mr. Marble continued to have no interest in flood insurance. The issue of flood insurance was mentioned to Mr. Marble first by Attorney Sheila Getzinger, who represented the Marbles at the February 20, 1998 closing. Attorney Getzinger notified Mr. Marble that "the bank was getting a flood certificate, and that based upon that flood certificate we may have to acquire flood insurance." Deposition of James W. Marble dated January 14, 2003 at 16. That statement was made over the telephone in the context of a conversation about "anything that would be needed or possibly needed to make sure that the closing went smoothly." Id. at 17. In the course of that conversation, Mr. Marble asked Attorney Getzinger how the determination about flood insurance would be made. Without identifying the company, Attorney Getzinger replied that "there is an expert company that will issue a flood determination certificate." Id. at 18. She did not explain how the determination would be made; there was no more discussion on the topic. Id. at 18-19. Other than mentioning to Martha Marble that they may be required to purchase flood insurance at the closing, Mr. Marble neither discussed flood insurance with anyone else prior to the closing

3

nor considered the possibility of purchasing flood insurance in the event that it would not be required.  Id. at 19.  At the closing, there was no discussion of flood insurance other than the brief mention that flood insurance was not required and thus would not affect closing costs.  Id. at 21.

Mr. Marble received a copy of the completed Standard Flood Hazard Determination Form from Banknorth at the closing.  The Form was not provided to the Marbles by FDSI, and FDSI had no specific knowledge that it would be provided to the Marbles by Banknorth.  Affidavit of Scott A. Gibberson paras. 10-16.  Mr. Marble also received, read, and signed a Notice to Borrower Not In Special Flood Hazard Area.  Deposition of James W. Marble at 26-27.  The Notice, which was provided by Banknorth at the closing, states that the building is not in an area designated by the Director of FEMA as a Special Flood Hazard Area and, as a result, mandatory flood insurance will not be required.  Affidavit of Katherine Wallace, para. 12.  The Notice further states, "However, your home may be near a SFHA.  As such you, or your lender, may want to consider the advisability of obtaining flood insurance at reduced rates.  You should check with your insurance agent or company as to the coverage types and amounts available to you and make your own determination as to whether you desire any such coverage."  Mr. Marble did not discuss the Notice with anyone before signing it.  Both James and Martha Marble signed this form acknowledging receipt of it.

Mr. Marble also received at the closing a copy of the appraisal made by Richard Lagerstedt for Banknorth, dated November 4, 1997.  In the Supplemental Addendum, the Appraisal states:

> The property is located along The Mad River in Waitsfield, VT.  The FEMA Map number is 5001200010D, and the Date of the Map is 9/05/84.  Based on a reading of the Map, the subject may possibly be located in Flood Zone A5.  The reader of this report may want to contact a Professional Engineer or Surveyor if they desire an exact determination of the Flood Zone the subject is in.  For further information, see the attached Flood Map.  The reader should also, however, be aware that the FEMA Flood maps are drawn from projections from orthophotographs, which are taken from low level flight airplanes.  While reasonably accurate, these maps do not always reflect the physical characteristics of the ground through the tree tops of some areas, such as where the subject is located.  A physical inspection of the house shows that the house is located near the Mad River, however the location of the house is on top of a river bank approximately 15 to 20 feet high.  Adjacent to this area is a 3 to 5 acre field.  If the river were to flood the field would act as a large reservoir.

Mr. Marble did not read the appraisal report at the closing.  It was referred to at the closing only to ensure that the appraised value of the property would yield an acceptable loan to equity ratio.  Deposition of James W. Marble at 57.

4

Flood insurance was never purchased. On June 27, 1998, the Mad River flooded the Marbles' home, substantially damaging it. The Mad River flooded again on August 24, 1998.

Analysis

The complaint asserts a claim of "negligence" against each Defendant for failing to "exercise reasonable care in the preparation, processing and issuance of the Determination of February 17, 1998." Defendants each have filed Motions for Summary Judgment. The thrust of Plaintiffs' claim against FDSI is that FDSI breached a duty owed to Plaintiffs by issuing an inaccurate Determination. FDSI asserts that the Determination is accurate,[1] and that it owed Plaintiffs no duty that would support a cause of action of negligence. Its position is that its obligations ran solely to Banknorth, with whom it had an agreement. The thrust of Plaintiffs' claim against Banknorth is based on Banknorth's role as a conduit in the communication of the allegedly inaccurate information.

In their memoranda, Defendants argue against several different characterizations of Plaintiffs' claim. Plaintiffs, in response, at once deny the Defendants' characterizations of their claims, but do not set forth clearly the elements of their claim against each Defendant with supporting evidence, nor do they identify the specific duty that they claim was breached. Because Plaintiffs state repeatedly that their claims sound in common law negligence (as opposed to being based on a duty created by statute), and because the only form of negligence action that is reasonably related to the facts of the case is negligent misrepresentation, the court concludes that Plaintiffs' claim against each Defendant is founded on a theory of negligent misrepresentation.

The elements of negligent misrepresentation are as follows:

One who, [1] in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, [2] supplies false information [3] for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them [4] **by their justifiable reliance upon the information**, if he [5] fails to exercise reasonable care or competence in obtaining or communicating the information.

---

[1]Any dispute over the accuracy of the Determination is not material to the disposition of Defendants' Motions, as the analysis set forth herein demonstrates.

5

Restatement (Second) of Torts § 552(1) (1977) (emphasis added), quoted in <u>Limoge v. People's Trust Co.</u>, 168 Vt. 265, 269 (1998). (Numbers added to clarify the separate elements of the cause of action.) Because no evidence in this case supports the element of justifiable reliance, Plaintiffs' negligent misrepresentation claim fails as to each Defendant, and it is unnecessary to examine whether there is evidentiary support for each of the other elements.

"Justifiable reliance is determined under an objective standard." <u>Limoge</u>, 168 Vt. at 269. In <u>Silva v. Stevens</u>, 156 Vt. 94 (1991), the Vermont Supreme Court "affirmed a jury instruction that stated that purchasers may justifiably rely on a representation 'when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by the plaintiffs.'" <u>Limoge</u>, 168 Vt. at 269 (quoting <u>Silva</u>, 156 Vt. at 108). In this case, Plaintiffs claim that the representation that their home did not lay in a Special Flood Hazard Area was not obviously false and was not generally within their knowledge, and therefore justifiable reliance is an issue for the jury as factfinder. This argument, however, pertains to a determination of whether reliance, if any, may be considered <u>justified</u> by the fact finder. Defendants argue that not only is there no justifiable reliance, there is no evidence to support a factual finding that the Plaintiffs relied on the representation at all.

In both <u>Silva</u> and <u>Limoge</u>, the Vermont Supreme Court concluded that the issue of justifiable reliance should have been determined by the jury. In <u>Silva</u>, the Court rejected the trial court's ruling that an "as is" clause in a purchase and sale agreement is a complete defense to a negligent misrepresentation claim. The Court accepted that the "as is" clause is relevant to the issue of justifiable reliance, but ruled that the matter was for the jury's consideration. See <u>Silva</u>, 156 Vt. at 113. Similarly, in <u>Limoge</u>, the Court held that a limited warranty and disclaimer in a purchase and sale agreement did not convert the issue of justifiable reliance to one of law. See <u>Limoge</u>, 168 Vt. at 269.

<u>Silva</u> and <u>Limoge</u> presented different issues from those in this case. Both <u>Silva</u> and <u>Limoge</u> stand for the proposition that the issue of whether reliance is justified generally will be reserved for the fact finder, but in both cases, there was evidence in support of reliance itself. The issue in this case is whether any evidence of reliance exists at all, which is a prerequisite to a consideration of whether any such reliance is justifiable.

Plaintiffs here have not put forth facts showing reliance by Plaintiffs on the Determination as the basis for a decision about whether or not to obtain flood insurance protection. The uncontroverted facts show that the Plaintiffs never had any interest in flood insurance, and in fact never purchased it because they were never required to do so, even though they lived on a riverbank and it was made available to them. They learned shortly before the closing that it might be a bank requirement. Their interest was not the risk of a flood, but whether the requirement might result in an additional closing cost. Plaintiffs have not shown that the Determination Form caused them to believe that their home was safe from a flood risk such that they decided not to purchase flood insurance.

6

If the facts reasonably supported an inference on the part of reasonable persons that Plaintiffs relied on the Determination, then even though other persons might infer otherwise on the same facts, the element of reliance would be sufficiently established for purposes of a prima facie case of negligent misrepresentation. On these facts, however, jurors could not make an inference of reliance sufficient to support a verdict because any inference would be too speculative. "The jury may employ rational inferences to bridge factual gaps left by circumstantial evidence, but at some point rational inference leaves off and speculation begins." State v. Durenleau, 163 Vt. 8, 14 (1994). Plaintiffs' own facts do not show any reliance at all making it unnecessary to address whether there is sufficient evidence to go to the jury on justifiable reliance.

Choice is integral to reliance. As explained in a leading treatise:

A representation is not actionable unless the plaintiff in fact relies upon it. To rely, the plaintiff must choose her conduct because of the representation, either acting or refraining from action because or partly because of the representation. For example, the plaintiff who enters into a transaction with the defendant does not rely upon the defendant's misrepresentation if she enters into the transaction without a belief in its truth, or doesn't learn of the misrepresentation until after the transaction has closed, or would have entered the transaction whether or not the misrepresentation had been made.

2 Dan B. Dobbs, The Law of Torts § 474, at 1358 (footnotes omitted). Plaintiffs have not shown reliance at its basic level. Behn v. Northeast Appraisal Co., 145 Vt. 101, 105 (1984) (directed verdict for defendant bank's appraiser upheld against home seller's claim of negligent appraisal by bank's appraiser where plaintiff introduced no evidence that he relied on the appraisal).

The negligent misrepresentation claims therefore fail.

### Order

For the foregoing reasons, Defendants' Motions for Summary Judgment are GRANTED.

Dated at Montpelier, Vermont this __ day of July, 2003.

_____
Mary Miles Teachout
Superior Court Judge

7