VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        24-AP-004



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

# ENTRY ORDER

NOVEMBER TERM,   2024

Kirt Westcom\* v. Harold Westcom & Dawn Hale

}
}
}
}
}

APPEALED FROM:

Superior Court, Franklin Unit, Civil Division
CASE NO. 21-CV-03973
Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Plaintiff appeals from a judgment in favor of defendants on his complaint.  He argues that the court erred in: (1) finding no evidence that the parties jointly owned real estate and thus rejecting his partition and ouster claims; (2) dismissing his fraudulent-inducement claim; and (3) allowing his counsel to withdraw without first holding a hearing on the motion, which caused him prejudice.  We agree with plaintiff's first argument and therefore reverse the court's dismissal of plaintiff's partition and ouster claims and remand for additional proceedings.  We reject plaintiff's remaining claims of error and affirm the remainder of the court's decision.

## I.  Procedural History

Plaintiff filed a complaint against defendants in December 2021, raising numerous claims.  Defendant Harold Westcom is plaintiff's father and defendant Dawn Hale is plaintiff's sister.[*]  Defendants were represented by counsel below.  Plaintiff had counsel until August 2023.  At that point, plaintiff filed a pro se notice of appearance and his attorney moved to withdraw.  The court granted counsel's motion to withdraw without holding a hearing.

A jury was drawn in late October 2023.  On the first day of trial, the court identified which claims were equitable and would be tried by the court and which would be tried by the jury.  The court emphasized that the case would need to be completed in a short timeframe given that the next available day for a jury trial would be in February of the following year.  The court suggested that the parties confer about waiving a jury trial.  After doing so, the parties agreed to waive the jury trial.

---

[*] For convenience, we refer to these defendants individually as father and sister.

Trial was held over a day and a half in December 2023. At the end of the first day of trial, the court suggested to defendants that the case would be appropriate for a motion for judgment on partial findings under Vermont Rule of Civil Procedure 52(c). Rule 52(c) provides that:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as provided in subdivision (a) of this rule, whether or not requested by a party.

Defendants orally requested this relief after plaintiff completed his case. The court took the request under advisement and defendants then presented one witness. When the testimony of this witness was complete, the court made findings on the record and granted judgment on partial findings to defendants under Rule 52(c).

The court found in relevant part as follows. In 1985, plaintiff graduated from high school and started farming on property owned by his parents located at 264 Egypt Road. Plaintiff's parents provided financial backing and logistical support; they cosigned financing and other documents as needed. Father assisted on the farm and plaintiff's mother acted as bookkeeper.

In 1995, plaintiff purchased adjacent property located at 262 Egypt Road. The court noted that there were allegations that plaintiff's parents were "on the papers" for this purchase but it did not find this fact established. It did find that father cosigned the loan for the purchase. In 2002, plaintiff built a house on 262 Egypt Road, and father also cosigned the loan for the house.

Two years earlier, in 2000, plaintiff started making lease payments to father for use of the 264 Egypt Road property. There was no evidence of a written lease at that time. In 2010, the parties signed a lease for the farm premises at 264 Egypt Road. The lease required monthly rental payments of $350 and was renewable automatically unless terminated by either party. The court found no evidence that either party terminated the agreement and thus, the lease remained in effect until plaintiff ceased farming operations in the fall of 2020. Plaintiff was incarcerated at some point during this period and father ran the farm on his behalf. The parties' relationship deteriorated thereafter.

Plaintiff's mother died in 2019. Not long afterward, father presented plaintiff with a quitclaim deed which plaintiff signed. This deed was not submitted into evidence, but the court found that it evidently divested plaintiff of any interest in 264 Egypt Road. The court found this conveyance contrary to an earlier plan where plaintiff, along with his two sisters, would inherit the property and plaintiff could then buy out his siblings. The court found that there was a suggestion of a deed to this effect, but no such deed was introduced into evidence and the court found "no competent evidence as to the contents of that deed."

The court found that father subsequently deeded the 264 Egypt Road property to daughter (defendant Hale). Again, the deed was not in evidence but in this instance the court relied on a

2

letter from an attorney to plaintiff to establish the substance of the deed. According to the letter, father retained a life estate in the deed with full powers of disposition with respect to that property. The attorney also told plaintiff in this letter to vacate the premises (presumably 264 Egypt Road) by a certain date and remove his cattle and equipment. That did not happen and the parties continued to negotiate a lease agreement. They could not agree on terms, however, and plaintiff left the property. Plaintiff moved his operations to a different farm and then stopped farming altogether. While plaintiff testified that he left the farm at 264 Egypt Road in October 2020, the court found that this assertion was unsupported by the evidence. It also found no evidence of any representation or agreement made by plaintiff's parents with respect to the future of 264 Egypt Road beyond that set forth in the written lease.

Based on these findings, the court rejected the claims in plaintiff's complaint as a matter of law, including his claim seeking partition of the 262 Egypt Road property. The court found that the partition claim hinged on a determination that the parties jointly owned 262 Egypt Road and it found no evidence to establish this fact. It thus concluded that this claim, as well as plaintiff's ouster claim which similarly required a showing of joint ownership, failed. Plaintiff's fraudulent inducement claim was based on an allegation that father lied to him about the nature of the quitclaim deed for the 264 Egypt Road property. As to this claim, the court found no proof that father made a statement to induce plaintiff to sign the quitclaim deed, let alone one that was knowingly and intentionally false, as required to establish this claim. We do not discuss the court's decision as to the remaining claims as plaintiff does not challenge them on appeal.

## II. Arguments on Appeal

We thus turn to plaintiff's arguments on appeal. Plaintiff asserts that the court committed clear error in finding no evidence that the 262 Egypt Road property was jointly owned. He cites to evidence in the record showing joint ownership, including his and father's testimony. Defendants did not dispute below, nor do they dispute on appeal, that the property is jointly owned. Plaintiff notes that defendants filed a copy of the deed for 262 Egypt Road showing this joint ownership as an exhibit in advance of trial and plaintiff filed a mortgage that referred the deed.

In "considering a Rule 52(c) judgment[,] we . . . review the trial court's conclusions of law de novo, and its underlying factual findings for clear error." Gladstone v. Stuart Cinemas Inc., 2005 VT 44, ¶ 10, 178 Vt. 104.

We agree with plaintiff that the court's finding regarding joint ownership is clearly erroneous. Plaintiff testified that he and his parents held the property at 262 Egypt Road as joint tenants with rights of survivorship. Plaintiff described the complications that the joint ownership had presented in trying to use the property as collateral without first obtaining father's signature. Indeed, the record indicates that plaintiff filed a motion for temporary relief during these proceedings, outlining how the property was jointly owned and alleging that father's refusal to cooperate was preventing him from obtaining a home-equity line of credit. Father testified in his preservation deposition, which was admitted into evidence at trial, that he was listed on the deed for the 262 Egypt Road property. The court suggested to plaintiff that his testimony as to the ownership of this property would be sufficient and that the deed could corroborate that testimony. Plaintiff struggled to find a copy of this deed at trial; his prior attorney had attached the wrong document to the initial complaint. The court indicated that it could not find a copy of this deed and asked defendants' counsel if she could. Defendants' counsel responded, "it's not

in [plaintiff's] [indiscernable]." This response exhibited a lack of candor with the court given that counsel did in fact possess a copy of this deed and had submitted it as a proposed defense exhibit in advance of trial. Defendants do not deny in their brief that the property is in fact jointly owned.

Defendants contend that plaintiff was required to submit the deed itself under the "best evidence" rule. They did not rely on this argument below and we do not consider this objection for the first time on appeal, particularly given defense counsel's response to the court's request for a copy of this deed. We note, moreover, that the trial court relied on a letter from an attorney to establish the contents of another deed, which was similarly not in evidence. Because the court's key finding regarding joint ownership was clearly erroneous, it follows that we must reverse the court's conclusions regarding plaintiff's partition and ouster claims, both of which rested on this erroneous finding.

Plaintiff next argues that the court erred in rejecting his fraudulent-inducement claim. According to plaintiff, his testimony and that of another sibling showed that before or at the time that father presented the quitclaim deed for 264 Egypt Road to be signed, father intentionally made false statements about an existing fact, namely, that the deed would transfer away his and his other sibling's rights to the property. Plaintiff maintains that father lied by saying that the deed would simply remove his mother's name given her recent death. Plaintiff contends that this false statement went to the main point of the conveyance of the deed, it substantially contributed to his decision to sign the deed, and father knew that the statement he made was false.

We agree with the trial court that defendants were entitled to judgment as a matter of law on this claim. To establish his claim, plaintiff needed to show, by clear and convincing evidence, "an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage." Silva v. Stevens, 156 Vt. 94, 102 (1991) (quotation omitted); In re Estate of Raedel, 152 Vt. 478, 485 (1989). Plaintiff does not provide a record citation for testimony that would establish "an intentional misrepresentation of existing fact" by father. Silva, 156 Vt. at 102. He cites to testimony from his sister regarding her experience in signing the quitclaim deed but identifies no testimony to show an intentional misrepresentation that father made to him in connection with signing the deed.

Finally, plaintiff asserts that the court erred in allowing his counsel to withdraw without first holding a hearing. Plaintiff cites Civil Rule 79.1(f), which provides that "[l]eave to withdraw after a case has been set for trial will be granted only for good cause shown and on such terms as the court may order." The rule further requires that, before a motion to withdraw is considered, a party must be "given notice of the motion and the date and time of hearing thereon by the clerk." V.R.C.P. 79.1(f). Plaintiff asserts that this process was not followed, and the procedural error prejudiced him as he felt compelled to enter his own appearance and proceed pro se. As an example of the harm he allegedly suffered by proceeding pro se, plaintiff notes that he tried several times to establish the nature of the ownership of 262 Egypt Road and, although the court understood what he was trying to prove, it failed to further assist him in doing so. He cites other examples as well.

We reject this argument. First, the case had not yet been set for trial, as plaintiff appears to suggest. The record further indicates that plaintiff filed his pro se notice of appearance on

4

Friday, August 25, 2023, prior to counsel filing his motion to withdraw on Monday, August 28, 2023. See V.R.C.P. 79.1(a) ("Nothing in these rules shall be construed to prevent any party in a suit from appearing for himself or herself, in which case the party so appearing shall be subject to the same rules that are or may be provided for attorneys in like cases, so far as the same are applicable."). The court granted counsel's withdrawal motion shortly thereafter, which was more than three months before trial. Even if the court should have held a hearing prior to granting counsel's request, we reject plaintiff's argument that the failure to hold a hearing on the motion caused him prejudice.

"We have stated that this Court will not permit unfair imposition or unconscionable advantage to be taken of one who acts as his own attorney" but "[t]his does not mean that pro se litigants are not bound by the ordinary rules of civil procedure." Vahlteich v. Knott, 139 Vt. 588, 590-91 (1981) (quotation omitted). Aside from defense counsel's lack of forthrightness with respect to a copy of the deed for 262 Egypt Road, the record does not support plaintiff's contention that he was unfairly taken advantage of due to his pro se status. The fact that plaintiff was at a disadvantage at trial given his pro se status does not show that he was treated in an unconscionable way. The record shows that the trial court was mindful of plaintiff's pro se status and assisted him as appropriate. The court could not establish plaintiff's case for him. We reject this claim of error.

The court's decision with respect to plaintiff's partition and ouster claims is reversed and remanded for additional proceedings; the remainder of the court's decision is affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice

5